**LLOYD'S FOOD PRODUCTS, INC., Appellant,**

v.

**ELI'S, INC., Appellee.**

No. 92–1386.

United States Court of Appeals, Federal Circuit.

March 3, 1993.

Robert V. Vickers, Body, Vickers & Daniels, Cleveland, OH, argued for appellant. With him on the brief was Thomas E. Young.

Robert J. Veal, Jennings, Carter, Thompson & Veal, of Birmingham, AL, argued for appellee.

Before MAYER, PLAGER and LOURIE, Circuit Judges.

MAYER, Circuit Judge.

Lloyd's Food Products, Inc. appeals the decision on summary judgment by the Patent and Trademark Office Trademark Trial and Appeal Board cancelling Registration No. 1,382,525. Cancellation No. 19,533 (April 3, 1992). The board cancelled Lloyd's Foods' registration based upon what it determined to be a likelihood of confusion between Lloyd's Foods' registered trademark for food products and the registration of a mark owned by Eli's, Inc. used in connection with restaurant services. We vacate and remand.

*Background*

In 1979, Eli's, Inc. obtained Registration No. 1,121,210 for the mark "Lloyd's" for use in connection with restaurant services. The registration was based on continuous prior use of the mark in connection with a single location, family style restaurant in Birmingham, Alabama, since at least 1937. Lloyd's Food Products, Inc. obtained Registration No. 1,382,525 in 1986 for the mark

"Lloyd's" and design, for cooked pork with barbecue sauce, barbecued beef and pork ribs, cooked beef with barbecue sauce and barbecue sauce.

Eli's filed a petition in the United States Patent and Trademark Office to cancel Lloyd's Foods' registration alleging a likelihood of confusion based on Eli's prior use and registration of the mark. Lloyd's Foods filed a counterclaim for cancellation of Eli's registration based on abandonment, and a motion for summary judgment seeking dismissal of the cancellation proceeding based on the absence of a likelihood of confusion. Eli's filed a cross motion for summary judgment arguing that there was no issue of material fact and that a likelihood of confusion was established as a matter of law. The board determined that there was no genuine issue of fact for trial on likelihood of confusion, granted Eli's motion, and cancelled Lloyd's Foods' registration.

## *Discussion*

■ The Commissioner of Trademarks may refuse to register a trademark that so resembles a previously registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive...." Lanham Act § 2(d), 15 U.S.C. § 1052(d) (1988). Likelihood of confusion is also grounds to cancel an existing registration upon petition by any person who believes that he is or will be damaged by the registration of a confusingly similar mark. *See id.* § 14, 15 U.S.C. § 1064 (1988). Likelihood of confusion between two marks is determined on a case-by-case basis, aided by application of the several factors set out in *In re E.I. Du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). The board's determination of whether there is a likelihood of confusion or not is reviewed by this court as a question of law based on underlying facts. *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 671, 223 USPQ 1281, 1282 (Fed.Cir.1984).

■ On a motion for summary judgment, the board must determine whether there is a genuine issue of material fact about likelihood of confusion. *See* 37 C.F.R. § 2.116(a) (1992). There is a genuine dispute when there is sufficient evidence for the fact finder to decide the question in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The evidence must be viewed in a light favorable to the non-movant and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513. This court reviews substantive and procedural aspects of the board's summary judgment decision *de novo*. *Opryland USA Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 850, 23 USPQ2d 1471, 1473 (Fed.Cir.1992).

The board had before it a limited record consisting of evidence provided by the parties in support of their respective motions. Lloyd's Foods submitted (1) the affidavit of Brian E. Turung, in which he testified to attached exhibits, which included a trademark search report and copies of yellow page and white page listings showing use of the "Lloyd's" mark; (2) a copy of the file histories of Registration Nos. 1,121,210 (Eli's) and 1,382,525 (Lloyd's Foods'); and (3) Eli's response to Lloyd's Foods' first set of interrogatories. In support of its motion, Eli's submitted (1) the affidavit of its president, Eli Stevens, relating his personal observations of alleged actual confusion, his knowledge of Eli's actions to protect its mark, and his opinion about the similarity of the products sold by the parties; (2) the affidavit of Eli's manager, Bogue Stevens, containing personal observations of alleged confusion by customers; and (3) the declarations of Ted and Michael Flach, relatives of the Stevens, about their observations of "Lloyd's" packaged products in a grocery store in Tampa, Florida, and in which Ted Flach stated he "wonder[ed] whether [the products were] connected in some way to the restaurant in Birmingham because the package contained barbecue products similar to those sold in the restaurant."

■ In concluding that a likelihood of confusion existed as a matter of law, the board erred in its treatment of the evidence

in the record. One of the relevant factors in the likelihood of confusion examination is the "number and nature of similar marks in use on similar goods [or services]." *In re E.I. Du Pont*, 476 F.2d at 1361, 177 USPQ at 567. As for Lloyd's Foods' proffered evidence of third-party use, the board stated that "[w]hile [it] has considered this evidence, the evidence is entitled to little weight. It is well settled that search reports and telephone directories listing marks and entities containing the term are incompetent by themselves to prove that those marks and trade names are in use or that the public is exposed to them. *See Fort Howard Paper Co. v. Kimberly–Clark Corp.*, 221 USPQ 732 (TTAB 1984); *In re Hub Distributing, Inc.*, 218 USPQ 284 (TTAB 1983)." From this, it is apparent to us that notwithstanding what it said it was doing, for all intents and purposes the board ignored this evidence. It thus rejected Lloyd's Foods' contention that the mark was "weak" and entitled to a narrow range of protection.

The marks at issue in the cases relied upon by the board were used in conjunction with the sale of goods, not with the provision of services. A service mark is different from a mark for goods, especially in the manner it is used in commerce. The legally significant use giving rise to rights in a mark for goods is derived from the placing of the mark in some manner on the goods either directly or on their containers or packaging. 15 U.S.C. § 1127 (1988). A service mark, on the other hand, entails use in conjunction with the offering and providing of a service. This makes all the more important the use of the mark in "sales" or "advertising" materials of different descriptions. *Id; see also Amica Mutual Insurance Co. v. R.H. Cosmetics Corp.*, 204 USPQ 155, 162 (TTAB 1979). Such use in advertising includes listing the name of the business, including the mark, in telephone directories and placing listings and advertisements in the yellow pages. Lloyd's Foods' threshold showing that the mark appears in advertising, in the form of current listings in the yellow and white pages, carries the presumption that the service mark is being used by third-parties in connection with the offering of the advertised services. It therefore was impermissible to disregard the directory listings. Eli's came forward with no evidence that the businesses listed are not, in fact, using the mark, or that their use has no effect on the consuming public, and consequently on the strength of Eli's registration. We come to no conclusion here about what weight should be given such evidence of third-party use in establishing the strength of the mark and the effect of this factor on the analysis of a likelihood of confusion. But the evidence presented was at least sufficient to raise a potentially dispositive issue of fact about the extent and character of the third-party use of the mark "Lloyd's," and to preclude summary judgment on the likelihood of confusion.

The board also drew impermissible inferences from the evidence against the non-movant, Lloyd's Foods. It gave considerable weight to the declarations of the Flachs and inferred from their testimony that a party familiar with Eli's restaurant was likely to be confused about origin when looking at Lloyd's Foods' products in a supermarket. The board said the declarations "demonstrate a situation showing how and why confusion is likely. *See Libbey–Owens–Ford Glass Co. v. Thermoproof Glass Co.*, [390 F.2d 770,] 156 USPQ 510 (CCPA 1968); and *Miles Laboratories, Inc. v. Smithkline Corp.*, 189 USPQ 290 (TTAB 1975)." But in the cases relied on the evidence established instances of actual confusion on the part of persons unrelated to the parties to the proceeding. In this case, the Flachs were not actually confused; they only "wondered" at a possible relationship. The board should not have inferred from this that confusion in similar situations was likely, especially when the declarants were related to Eli Stevens and not shown to be representative of the consuming public.

The board is correct that there is no *per se* rule about confusion where similar marks are used in connection with restaurant services and food products. *See Jacobs v. International Multifoods Corp.*, 668 F.2d 1234, 1236, 212 USPQ 641, 642

(CCPA 1982). But it does not follow that customers would be confused about the source of the packaged "Lloyd's" products because they might think that Eli's restaurant was branching out into packaged food sales. The board drew this inference primarily from the statements of Eli Stevens and Ted Flach that Lloyd's Foods' products are of the same type as those sold in Eli's restaurant, and from the previously acknowledged tendency of restaurants frequently to package their food for sale. *See, e.g., In re Mucky Duck Mustard Co.,* 6 USPQ2d 1467, 1469 (TTAB 1988). The evidence in the record, however, only suggests a general similarity between the type of food packaged by Lloyd's Foods and some of the items available on the menu in Eli's restaurant. Lloyd's Foods argued that the products and services offered are not of the same type and objected to Eli's conclusory affidavits. So the board's determination is contrary to its rejection of a *per se* rule, and disregards the requirement that "a party must show something more than that similar or even identical marks are used for food products and for restaurant services." *Jacobs,* 668 F.2d at 1236, 212 USPQ at 642 (footnote omitted).

### Conclusion

Accordingly, the decision of the Patent and Trademark Office Trademark Trial and Appeal Board is vacated, and the case is remanded for further proceedings consistent with this opinion.

### COSTS

Eli's, Inc. shall bear the costs of this appeal.

**VACATED AND REMANDED.**