THIS OPINION IS CITABLE
AS PRECEDENT OF
THE T.T.A.B.

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
**Trademark Trial and Appeal Board**
2900 Crystal Drive
Arlington, Virginia 22202-3513

EAD

Mailed: 3/4/2003

Opposition No. 119,852

Interpayment Services
Limited, and Travelex Global
and Financial Services Ltd.,
joined as party plaintiffs[1]

v.

Docters & Thiede

Before Cissel, Hairston, and Rogers, Administrative
Trademark Judges.

By the Board:

This case comes up on opposer's[2] motion for summary

judgment on the issue of whether applicant's asserted mark,

---

[1] On December 30, 1999, opposer Interpayment Services Limited
assigned pleaded Registration No. 1,666,064 to The Thomas Cook
Group Limited. (The assignment is recorded with the U. S. Patent
and Trademark Office Assignment Branch at Reel 2185, Frame 0481.)
On September 27, 2001, The Thomas Cook Group Limited changed its
name to Travelex Global and Financial Services Ltd. (Reel 2572,
Frame 0873.)  On September 23, 2002, the Board granted opposer's
motion to join Travelex Global and Financial Services Ltd. as
party plaintiff.
 On September 30, 2002, applicant moved to reopen the time to
respond to opposer's motion to join on the basis that applicant
did not receive a copy (despite the certificate of service shown
thereon).  Because joinder is clearly warranted, and would have
otherwise have been ordered *sua sponte* by the Board, applicant's
motion to reopen is denied.  *See* Patent and Trademark Office
Rules 3.71 and 3.73(b).  *See also* Fed. R. Civ. P. 17 and 19.
Opposers are ordered to send applicant a copy of opposers' motion
to join within 10 days of the mailing date on this order.

shown below, is equivalent to the euro symbol, also shown below, and merely descriptive as applied to applicant's goods and services which, *inter alia*, involve conversion of other currencies to euros or euros to other currencies.

| € | € |
|---|---|
| Drawing from application Serial No. 75/671,927 | Euro symbol (symbol inserted by Microsoft Word  software) |

In an earlier order issued January 31, 2002, the Board deferred consideration of opposer's motion for summary judgment on the unpleaded issue of mere descriptiveness until the issue was properly brought before the Board.[3] Subsequently, opposer filed an amended notice of opposition with the claim that applicant's asserted mark is the euro symbol and merely descriptive as applied to applicant's goods and in connection with applicant's services, and applicant filed an answer to the amended opposition and a brief opposing entry of summary judgment on the new claim.

---

[2] Because there was a single opposer when opposer's motion for summary judgment was filed, this order will refer to opposer in the singular.

[3] After the Board construed the pleadings as asserting a claim of likelihood of confusion and a claim that the mark was generic, the Board found that opposer sought entry of summary judgment on its pleaded claim that the mark was generic and the unpleaded claim that the asserted mark is merely descriptive. The Board entered summary judgment for applicant (the non-moving party) on opposer's claim that the asserted mark is generic.

In the amended claim opposer has challenged applicant's right to register the symbol shown above as a trademark for "computer software for use in on-line financial transactions; computer hardware and software that disperses and creates digital cash; magnetically encoded credit and debit cards," "art prints and publications, namely magazines in the field of finance," and "on-line financial transaction services, namely electronic cash transactions, electronic credit card transactions, and electronic debit transactions."[4]

Opposer asserts that it is one of the world's leading international travel and financial services companies; that it provides various international money transfer and foreign exchange services, including the issuance, collection, administration, and processing of travelers checks, international money orders, bank drafts, wire transfers, and lines of credit; that applicant's design is identical or substantially similar to the symbol adopted by the European Union for the euro, the new common European currency; that applicant's mark is merely descriptive of its goods and services; that any registration of applicant's proposed mark would injure opposer's right to use what is a

---

[4] Application Serial No. 75/671,927, filed March 30, 1999, is based on applicant's allegation of a bona fide intention to use the mark in commerce.

merely descriptive design in connection with the same or related goods and services; and that summary judgment should be entered for opposer.

In support of its position, opposer relies on the same evidence brought in support of its prior claim that applicant's mark is generic (see footnote 3, *supra*), namely 23 pages printed from the European Union's website in which the euro, its symbol, and its origin are discussed, and an enlarged version of the euro symbol is displayed; a copy of the drawing page from the opposed application showing applicant's proposed mark; a page from applicant's website showing use of applicant's proposed mark; the August 10, 2001 discovery deposition of Rob Docters, a partner in applicant, describing applicant's goods and services; the declaration of Duncan Walker, General Counsel for opposer, stating that opposer and other providers of financial services located in the United States and around the world use the euro symbol "to identify transactions or monetary valuations in that currency"; a series of printouts from webpages describing the efforts of computer and software businesses to offer customers the use of the euro symbol on their computers; and a series of newspaper articles indicating that the introduction of the euro and euro symbol has received widespread publicity in the United States.

In response, applicant contends that its mark may be characterized in several ways, including as a stylized version of the euro symbol; that the evidence of record shows merely that the euro symbol is generic for a type of currency; that applicant's mark is suggestive of its goods and services; and that opposer has failed to present any evidence that the euro symbol would be perceived by the relevant purchasing public as merely descriptive of applicant's goods and services.

In support of its position, applicant relies on the declaration of John Rannells, attorney for applicant, and attached exhibits, namely excerpts from the August 10, 2001 discovery deposition of Rob Docters, a partner in applicant, regarding applicant's adoption of the mark, applicant's description of the mark, the intended commercial impression of the mark, how the mark differs from the euro symbol, and applicant's description of its goods and services; copies of printouts of U. S. Patent and Trademark Office (USPTO) electronic records of current and past trademark applications and registrations incorporating currency symbols such as the dollar and cents signs, and printouts from websites in which the marks are displayed; a document showing how the dollar sign may be shown in different fonts; and three Internet articles referring to the euro as a

symbol of not just currency but European cooperation and unity.

We turn first to the similarities between applicant's mark and the euro symbol.  As set forth in the printout from the European Union's website submitted by opposer, the euro is the new currency for the European Union, and "[t]he graphic symbol for the euro looks like an E with two clearly marked, horizontal parallel lines across it.  It was inspired by the Greek letter epsilon, in reference to the cradle of European civilization and to the first letter of the word 'Europe'.  The parallel lines represent the stability of the euro."

There is no genuine issue of material fact that applicant's mark and the euro symbol are substantially identical, and would be perceived by consumers as identical. In his deposition, Mr. Docters describes applicant's mark variously as (i) a combination of "an equal sign [which] had a nice connotation of connectedness, and something that looked like an e" (Docters deposition, page 17) and (ii) "the equal sign and the C" (Docters deposition, page 27). There is no genuine issue that an equal sign is created by horizontal parallel lines, and that Mr. Docters' first description of applicant's proposed mark thus matches the European Union's description of the euro.  Indeed, Mr. Docters specifies that "those same elements" which he used

6

to describe applicant's mark were found in "every [euro symbol] that I've seen" (Docters deposition, page 27). Moreover, even when we consider applicant's view of its symbol as a combination of an equal sign and the letter C, the symbol resulting from the combination is equivalent to the euro symbol. In short, it does not matter what applicant's intentions were in creating its mark or what its characterization of its mark is. The fact remains that the two symbols end up being substantially identical, and that there is no genuine issue of material fact that the public will perceive applicant's mark as the euro symbol.

We next must determine whether the euro symbol is merely descriptive as applied to applicant's goods and in connection with its services. It is well settled that a term or symbol is considered to be merely descriptive of goods or services, within the meaning of Section 2(e)(1) of the Trademark Act, if it forthwith conveys information concerning any significant ingredient, quality, characteristic, feature, function, purpose, subject matter or use of the goods or services. *See In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987); *In re Abcor Development Corp.*, 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA 1978). It is not necessary that the term or symbol describe all of the properties or functions of the goods or services in order for it to be considered to be merely descriptive

7

thereof; rather, it is sufficient if the term or symbol describes a significant attribute or idea about them. Moreover, whether a term or symbol is merely descriptive is determined not in the abstract but in relation to the goods or services for which registration is sought, the context in which it is being used or is intended to be used on or in connection with those goods or services and the possible significance that the term or symbol would have to the average purchaser of the goods or services because of the manner of such use. *See In re Bright-Crest, Ltd.*, 204 USPQ 591, 593 (TTAB 1979).

Here, applicant's symbol, essentially the euro symbol, is intended to be used with computer software for use in on-line financial transactions, computer hardware and software that disperses and creates digital cash, credit and debit cards, magazines in the field of finance, and on-line financial transaction services, namely electronic cash transactions, electronic credit card transactions, and electronic debit transactions. There is no genuine issue that, with regard to each of applicant's goods and services, applicant's broad description encompasses goods and services which feature euros. Specifically, applicant's identified "computer software for use in on-line financial transactions" encompasses software for online conversion to and from euros, that applicant's identified "magazines in

the field of finance" encompasses magazines with articles on online conversion to and from euros, and that applicant's identified "on-line financial transaction services" encompass online services for the conversion of euros.

The evidence of record establishes that applicant's goods and services, as identified in its application, encompass goods and services which involve euros. Although the opposed application is based on applicant's allegation of a bona fide intention to use the proposed mark in commerce, opposer submitted a printout from applicant's website showing use of the proposed mark. This page states, in part:

> E-deposits is a service which makes it easy for you to transact on the Internet. We cross several categories of old-line firms… We act as an electronic currency, thus if you have US dollars but want to buy an item in Deutsch marks, buy our e-deposit euros and we can ensure a rapid transaction.

The discovery deposition of Rob Docters also provides information about the goods and services with which applicant intends to use the symbol. Mr. Docters describes the purpose of the partnership and the resulting goods and services as

> to facilitate the growth of on-line auctions, and to facilitate other on-line transactions in connection with Internet-based commerce … participants in on-line auctions obviously are transnational, the parties could be in

different countries, and typically the seller wants payment in his local, or her local, currency, so we would in fact facilitate the payment in a foreign currency, foreign to the U.S. currency.
(Docters deposition, page 9-10)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

What this was an attempt to do was basically communicate the idea that we can offer - we can basically help people buy stuff in different currencies

Including the euro?

Well, there is no euro as such, but basically that was shorthand for, you know, we can handle a bunch of currencies for major countries, yes.

When you say there is no euro, are you aware that business can be currently transacted in euros?

Oh, I'm sure it is, yeah.
(Docters deposition, page 43)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

What do you intend to do with the computer software that you develop? Well, it varies a little bit by the market.  B-to-C [business to consumer] would represent the service that we provide to folks, so they would - let's say they wanted to buy something from, you know, Internet vendor X, and they were suspicious of either that vendor's security or they couldn't deal with them for various reasons because of platform incompatibilities, they would come to us and we would in fact basically provide that translation.
(Docters deposition, pages 69-70)

*******************************

I want you to take a look at Docters
Exhibit 6.  Just physically what is D-6?

Well, this is the, sort of the, this is
physically what we sent anybody who
inquired as a result of either our Web
site or the postcards, you know,
basically saying tell me more.  So what
we did was we put together this little
brochure, magazine or whatever you call
it, and basically it answers some of the
commonly asked questions and talks about
aspects of on-line commerce.  So for
instance, you know, it says well, you
know, why use us.
(Docters deposition, page 71)


*******************************

Would you clarify your testimony when
you said you did not intend to do
magazines?

…The business plan does not envision us
charging for this kind of information.
I mean what the business plan envisions
is that it's the services and it's the
licensing of the software and the
distribution of that capability, is
where we're making our money.  We don't…
we're not going to be Time Magazine here
and sell these sorts of things
(indicating [Exhibit 6]).  Although what
we might do, what is part of the
business plan is the consulting
component typically does involve selling
reports and recommendations and plans on

> how you set up your website, how you set
> up the transaction component.
> (Docters deposition, page 72)[5]

Thus, the record is clear that applicant's software will facilitate international online transactions by providing currency conversion, including conversion to and from euros; that applicant's magazines in the field of finance will feature articles about software and services that facilitate online international transactions by providing currency conversion, including conversion to and from euros; and that applicant's online financial services will facilitate international online transactions by providing currency conversion, including conversion to and from euros.

This evidence is uncontroverted by applicant and thus, there is no genuine issue as to the foregoing facts. In opposing entry of judgment for opposer, applicant's position

---

[5] Docters' deposition casts some doubt as to whether applicant actually has a bona fide intention to use the euro symbol on the goods identified as "magazines in the field of finance". Marks used on multipage advertisements distributed without charge to prospective customers to promote the sale of applicant's software and online financial services would not be deemed to be "in use in commerce on goods" as defined by the statute. *See* Trademark Act Section 45, 15 U.S.C. §1127. However, we need not reach that issue.
 The excerpted evidence demonstrates that the content of the magazines is intended to alert prospective customers to applicant's other goods and services. Specifically, the subject of applicant's magazines will be software and online financial services to facilitate online commerce by providing currency conversion, including conversion to and from euros. In this respect, our analysis of descriptiveness is equally applicable to applicant's magazines as to applicant's other goods and services.

is that, as a matter of law, its symbol is not merely descriptive of its goods, asserting that the euro symbol is merely suggestive of goods and services which convert funds to or from euros.

As proof thereof, applicant points to the many trademarks incorporating other currency symbols which the USPTO has registered. Attached to applicant's response to opposer's motion for summary judgment are several third-party trademark registrations.[6] However, the marks featuring currency symbols submitted by applicant, most frequently marks incorporating the dollar sign, differ greatly from applicant's euro symbol in the commercial impression created. Notwithstanding applicant's reference to its mark as a "stylized version" of the euro, applicant's mark is the euro symbol, and only the euro symbol. We find nothing in the applied-for design mark which would alter the impression that the mark is an unadorned euro symbol.

---

[6] Applicant has also submitted third-party applications featuring marks which were published for opposition. The Board has long held that third-party applications are evidence only of the fact that they were filed; they have no other probative value. *In re Juleigh Jeans Sportswear, Inc.*, 24 USPQ2d 1694 (TTAB 1992). However, in determining this motion for summary judgment, we have considered the third-party applications featuring marks which were published for opposition as evidence of marks incorporating currency symbols which the USPTO has considered registrable. So considered, the third-party applications featuring marks published for opposition suffer from the same infirmities as the third-party registrations. In that they differ greatly from applicant's euro symbol in the commercial impression created, they fail to raise a genuine issue of material fact.

13

Applicant's euro symbol creates the impression of plain typography, or a common font such as what would be used in a newspaper article, or report ("The legal services cost €1,000"). Applicant's third-party registrations do not feature the dollar sign, or any other currency symbol, in plain typography, or a common font. Instead, each mark in the third-party registrations which were submitted by applicant features an element of distinctiveness which insures that the mark would not be perceived as an unadorned currency symbol. The two most common variations in the marks either incorporate the dollar sign with other elements (e.g., replacing the letter S in a word, or appearing against a background design) or give visual prominence to the dollar sign itself (e.g., exaggerated in proportion, shadowed, striped, or presented as a graffiti scrawl). While the marks featuring the dollar sign and other monetary symbols in the third-party registrations differ widely from the currency symbols on which they are based, applicant's symbol is the same as the euro symbol. Thus, this evidence is not sufficient to raise a genuine issue of material fact as to whether the applicant's mark is merely descriptive.

The burden is on the party moving for summary judgment to show the absence of any genuine issue of material fact, and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); and *Celotex Corp. v. Catrett*, 477

14

U.S. 317, 106 S. Ct. 2548 (1986).  The evidence must be viewed in a light favorable to the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor.  *See Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993); *Opryland USA Inc. v. Great American Music Show Inc.*, 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992); and *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).

Upon careful consideration of the record, we find that there is no genuine issue that the mark applicant seeks to register will be perceived as identical to the euro symbol; that there is no genuine issue that applicant's software will facilitate international online transactions by providing currency conversion, including conversion to and from euros; that applicant's magazines in the field of finance will feature articles about software and services that facilitate online international transactions by providing currency conversion, including conversion to and from euros; that applicant's online financial services will facilitate international online transactions by providing currency conversion, including conversion to and from euros; that there is no genuine issue that the potential purchaser will immediately understand, upon seeing the euro symbol used in connection with applicant's goods and services, that applicant's software for use in on-line financial

15

transactions will include conversion of euros, that applicant's magazines in the field of finance will feature articles about the on-line conversion of euros, and that applicant's online financial services will provide conversion of euros. In short, we find that there are no genuine issues of material fact that the euro is a central feature of applicant's identified goods and services and that the mark will be perceived as identical to the symbol for this currency. We further find, as a matter of law, that applicant's mark is merely descriptive as applied to applicant's goods and services. Thus, opposer is entitled to summary judgment.

Accordingly, opposer's motion for summary judgment is granted, and judgment is entered against applicant on the ground that applicant's mark is merely descriptive of applicant's goods and services. The opposition is sustained, and registration to applicant is refused.

16