THIS OPINION IS CITABLE
AS PRECEDENT OF
THE T.T.A.B.

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**

Mailed: May 4, 2006

Opposition No. 91101408
91108831

KARSTEN MANUFACTURING
CORPORATION

v.

EDITOY AG; EDITOY B.V.; PINGU
B.V.; AND JOKER, INC.[1]

Before Seeherman, Walters, and Kuhlke, Administrative
Trademark Judges.
By Walters, Administrative Trademark Judge:

Now before the Board are the following matters[2]:

---

[1] Application Serial No. 74435498 for the mark PINGU was filed on September 13, 1993 by Editoy AG, a Swiss corporation. It is the subject of Opposition No. 91101408. The application was assigned to Editoy BV, a Netherlands corporation, which subsequently changed its name to Pingu BV. These transactions were recorded at the USPTO at Reel 1491/Frame 0603 (assignment from Editoy AG to Editoy B.V., executed December 1, 1995); Reel 1464/Frame 0063 (change of name from Editoy B.V. to Pingu B.V., executed February 27, 1996).

Application Serial No. 75226025 for the mark PINGU and design was filed on January 15, 1997 by Pingu BV. It is the subject of Opposition No. 91108831. Subsequent to the institution of these opposition proceedings, both applications were assigned to Joker, Inc., a Texas corporation, on November 8, 2001 (recorded at Reel 2413/Frame 0224).

The proceedings were consolidated by order of the Board on November 14, 2002. The defendants in these consolidated proceedings include the owners by assignment and change of name noted herein.

[2] The Board regrets the delay involved in addressing these matters. The Board notes, however, that both parties responded to the Board's status inquiry by submitting further arguments in support of their respective positions in the noted matters. Such arguments are impermissible as they are essentially in the nature

1. Opposer's motion for summary judgment sustaining its consolidated oppositions, filed March 26, 2003; and

2. Opposer's motion to amend its notices of opposition, filed May 8, 2003.

The motions have been fully briefed.[3]

As background in connection with opposer's motions, we note that this consolidated opposition proceeding involves two applications, one for the word mark PINGU for goods in International Classes 18, 25 and 28; and one for the mark PINGU and design for goods in International Classes 9, 16, 18, 25 and 28. Each application was filed by a foreign applicant properly claiming a right of priority under Section 44(d) and a right to registration under Section 44(e) of the Trademark Act. The applications have been opposed by Karsten Manufacturing Corporation, claiming priority of use of the marks PING and ZING for a large variety of sporting goods and accessories, primarily golf-related items, as well as numerous U.S. registrations for these marks.[4] Opposer alleges that applicant's use of the

---

of surreplies and, thus, these additional arguments have not been considered.

[3] Opposer objects to those arguments in applicant's response to opposer's motion to amend its notice of opposition that consist merely of further arguments against opposer's motion for summary judgment. We agree that such arguments are impermissible because they are essentially in the nature of a surreply to opposer's motion for summary judgment and, thus, these arguments have not been considered. See 37 C.F.R. §2.127(a) and TBMP 502.02(b).

[4] Karsten claims ownership of nine U.S. registrations for goods such as golf clubs and other sporting goods and clothing.

PINGU marks in connection with the identified goods would be likely to cause confusion, or to cause mistake, or to deceive. Applicant has denied all the salient allegations in the notices of opposition.

### *Opposer's Motion to Amend its Notices of Opposition*

Opposer seeks to amend each of its notices of opposition by adding a new paragraph, which is shown below:

> The original foreign applicant, when it filed the opposed application, properly claimed the benefits of Lanham Act Section 44, 15 U.S.C. § 1126. On November 11, 2001, the original foreign applicant assigned the opposed application to Joker, Inc., a Texas corporation which did not meet the foreign situs qualification requirements imposed by Section 44. Because the statutory requirements of Section 44 have now been violated, the opposed application is void and invalid. Registration of the opposed application should be refused. The country of origin of the priority application is not Applicant's country of origin. Accordingly, the application also fails to comply with the provisions of Section 44(e).

As grounds for its motion to amend, opposer states that when the original notices of opposition were filed, the proposed ground did not exist; and that during a deposition in February, 2003, it first learned of facts giving rise to this new claim.

Applicant has opposed the motion to amend. First, applicant contends that the motion to amend is untimely "because it follows, rather than precedes, a Motion for Summary Judgment on the claims it seeks to add." (Response at 1). In fact, after receiving applicant's response to

3

opposer's motion for summary judgment, in which applicant asserted that the motion was based on an unpleaded issue, opposer withdrew its motion for summary judgment and refiled the identical motion after filing its motion to amend. As a general rule, although the Board will not grant summary judgment on an unpleaded issue, if the Board denies a motion for summary judgment on this basis, it will entertain a renewed motion if it is accompanied by a motion to amend the pleading to set forth claims upon which the party has moved for summary judgment. Here, opposer has corrected the problem of seeking summary judgment on an unpleaded ground by moving to amend its pleading prior to the Board acting on the initial motion for summary judgment. There is nothing inherently wrong in bringing a motion to amend in such circumstances. Moreover, under these circumstances, the motion to amend is germane to the motion for summary judgment. 37 C.F.R. § 2.127(d). Accordingly, we do not view this as a basis for denying the motion to amend.

Applicant also contends that opposer has unduly delayed in bringing the motion to amend; that applicant will be prejudiced by such delay; and that the motion should be denied as there is no merit in the proposed allegations.[5]

---

[5] With regard to the merits of the proposed allegations, applicant asserts that if opposer's motion to amend is granted, applicant should be given an opportunity to amend its applications to assert an alternative filing basis of Section 1(b) of the Trademark Act, namely, that it has a bona fide intent

Rule 15(a) of the Federal Rules of Civil Procedure encourages courts to look favorably on motions to amend when justice so requires. In deciding such a motion, the Board will grant the motion unless entry of the proposed amendment would violate settled law or would be prejudicial to applicant. *See Boral Ltd. v. FMC Corp.,* 59 USPQ2d 1701, 1702 (TTAB 2000) and cases cited therein. Where the moving party seeks to add a new claim that is legally insufficient, the Board will normally deny the motion to amend. *Enterprise Rent-A-Car Co. v. Advantage Rent-A-Car Inc.,* 62 USPQ2d 1857 (TTAB 2002) *aff'd*, 30 F.3d 1333, 66 USPQ2d 1811 (Fed. Cir. 2003).

The Board does not find any prejudice to applicant nor do we find the motion untimely. Opposer learned of the new allegations in a discovery deposition in February 2003, and filed its motion on May 8, 2003. Under these circumstances it is appropriate to accept the amended notices of opposition. Applicant has not indicated in its opposing papers how the amendment will prejudice it, nor do we see any prejudice. We also find that the new claim is legally sufficient, as more fully discussed below. Accordingly, opposer's motion to amend both notices of opposition is granted.

---

to use the marks in commerce. This question is addressed, *infra*, in the context of opposer's motion for summary judgment.

### *Opposer's Motion for Summary Judgment*

Opposer has moved for summary judgment on the newly-asserted ground quoted herein that the applications, which were properly filed by foreign entities with a claim of priority under Section 44(d) and based on Section 44(e), became invalid and void upon their assignment to the present applicant, a domestic entity not entitled to the benefits of Section 44. The motion does not address opposer's likelihood of confusion claim.

Opposer contends that the applicant by assignment of both applications, Joker, Inc. ("Joker"), is a Texas corporation with no industrial or commercial facilities outside the United States; and that Joker has not used the subject marks on any goods in the United States. Opposer concedes that the original applicants herein were foreign entities entitled to proceed under Section 44 (motion, p.6), but argues that *Nestle Co., Inc. v. Grenadier Chocolate Co.*, 212 USPQ 214 (TTAB 1981), is the controlling precedent and, therefore, the assignment of the applications to a domestic entity rendered the applications invalid and void.

Opposer notes that a foreign applicant properly asserting a basis under Section 44(e) may amend its application to substitute a claim of a bona fide intention to use its mark in commerce under Section 1(b) because it has, from its filing date, a continuing valid basis for

registration. However, opposer argues that such a change in basis cannot be made when the application is assigned to an entity not entitled to the benefits of Section 44 because there is no continuing valid basis for the application, which becomes void upon assignment and cannot be resurrected.

Opposer argues, further, that Joker is not entitled to claim the United Kingdom as a country of origin simply because it is a wholly-owned subsidiary of Lyrick Corporation, which is a wholly-owned subsidiary of HIT Entertainment, PLC, a U.K. corporation, citing *In re Aktiebolaget Electrolux*, 182 USPQ 255 (TTAB 1974); that Joker cannot assert an alternative basis for registration under Section 1(a) because it has not used either mark in commerce in connection with the respective identified goods; that Joker cannot assert an alternative basis for registration under Section 1(b) under any circumstances because, as it did not exist at the time the applications were filed, it could not attest to its bona fide intention to use the marks as of the filing dates of the applications; and that, if Joker should be permitted to amend its applications to assert a basis under Section 1(b), its filing dates must be changed and the marks should be re-published for opposition.

7

Applicant contends that its applications are valid and that the controlling precedent is *In re De Luxe, N.V.*, 990 F.2d 607, 26 USPQ2d 1475 (Fed. Cir. 1993), which applicant states stands for the principle that, if Section 44 requirements are met at the time of filing an application, the "application may be freely assigned thereafter to a United States entity without in any way jeopardizing the validity of the application or resulting registration" (response to motion, p. 2).

Applicant also contends that it is entitled to assert a Section 44 basis because it has "more than one 'country of origin' for purposes of Section 44, because it has more than one bona fide commercial establishment" (response to motion, p. 4). The following facts are from the deposition of its witness, Joyce Slocum, submitted in connection with this motion:

- Joker was formed for the sole purpose of holding title to all intellectual property related to the PINGU mark (Slocum Dep., p. 12);
- Joker's parent, Lyrick Corporation, has as its parent a U.K. company, HIT Entertainment, PLC ("HIT") (Slocum Dep., p.11);
- Joker owns no assets other than PINGU intellectual property and has no employees (Slocum Dep., pp. 12-14);
- HIT and Lyrick employees conduct all commercial activities on Joker's behalf in the United Kingdom, Germany and Japan (Slocum Dep., p. 42, Slocum Aff., para. 4, 6);
- PINGU merchandise and programming is actively sold outside the United States, and new episodes of Joker's programs are produced in the United Kingdom. (Slocum Aff., para. 5); and

8

- Up to the time of the Slocum deposition, Joker had not attempted any exploitation of the PINGU character and marks in the United States (Slocum Dep., p. 42).

On a motion for summary judgment, the burden is on the moving party to demonstrate the absence of any genuine issue of material fact, and that it is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See also, Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The evidence of record and any inferences which may be drawn from the underlying undisputed facts must be viewed in a light most favorable to the non-moving party.  *See Olde Tyme Foods Inc. v. Roundy's Inc., 9*61 F.2d 200, 22 USPQ2d 1542 (Fed. Cir. 1992).  In considering the propriety of summary judgment, the Board may not resolve issues of material fact; it may only ascertain whether such issues are present.  *See Opryland USA, Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1993); and *Lloyd's Food Products Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993).

There is no genuine issue of material fact, and the parties agree, that the subject applications were filed by foreign entities, claiming a right of priority under Section 44(d) of the Trademark Act, and asserting Section 44(e) of the Act as a basis for filing the applications and ultimately obtaining registrations; and that after the

instant oppositions were filed, both applications were assigned to Joker, Inc., a Texas corporation.[6]

Section 44(d) of the Lanham Trademark Act, 15 U.S.C. § 1126(d), allows an applicant meeting the requirements of Section 44(b) to apply for U.S. registration and claim priority as of the filing date of a corresponding first-filed foreign application, if the U.S. application is filed within 6 months of the filing of the first-filed foreign application.  To obtain a registration, such an applicant must either assert a basis under Section 1 of the Act and use the mark in commerce in the United States or claim the benefits of Section 44(e) of the Act.

Section 44(e) permits a Section 44(b) applicant to register a mark without first using the mark in the United States, provided the applicant files a certified copy of the corresponding foreign registration.  *See In re Fisons Ltd.,* 197 USPQ 888 (TTAB 1978).  Because Section 44(e) of the Act represents an exception for applicants meeting the requirements of Section 44(b) to the requirement that applicants must make use of the mark in commerce regulable

---

[6] Opposition no. 91101408 was filed on January 23, 1996 against application serial no. 74435498.  Because only three of 30 classes were opposed, the unopposed classes were divided out of this application and became application serial no. 75983115, which is not presently part of this consolidated proceeding. Opposition no. 91108831 was filed on December 3, 1997 against application serial no. 75226025.  Both applications were assigned from their foreign owners to Joker on November 8, 2001.

by the U.S. Congress prior to registration, the requirements imposed on Section 44 applicants are strictly construed. *See United Rum Merchants Ltd. v. Distillers Corp. (S.A.) Ltd.,* 9 USPQ2d 1481, 1483 (TTAB 1988).

To register a mark in the United States under Section 44, the applicant must be "any 'person' whose 'country of origin' is a party to any convention or treaty relating to trademarks … to which the United States is also a party". 15 U.S.C. § 1126(b), Section 44(b) of the Act. *See also Fisons, supra* at 892. Section 44(c) of the Act defines a "country of origin" as "the country in which [applicant] has a bona fide and effective industrial or commercial establishment, or if [applicant] has not such an establishment the country in which he is domiciled, or if [applicant] has not a domicile in any of the countries described in subsection (b) of this section, the country of which [applicant] is a national." A corporate applicant's "country of origin" does not have to be the applicant's country of incorporation if the applicant has a bona fide commercial establishment elsewhere. *See In re International Barrier Corp.,* 231 USPQ 310 (TTAB 1986).

We begin our analysis by considering applicant's contention that, based on the facts noted above, it has qualifying "countries of origin" in addition to the United States, entitling it to rely independently on its

predecessors' claims under Section 44. In the case of *In re Aktiebolaget Electrolux, supra*, the Board held that an applicant may not establish a country of origin outside of the United States by relying on the commercial facilities of another company in a parent-subsidiary relationship. In the case of *Ex parte Blum,* 138 USPQ 316 (Comm'r 1963), the Commissioner held that a country of origin cannot be established by relying on contractual relationships with a licensee in another country. In view thereof, we find that neither applicant's status as a wholly-owned subsidiary of Lyrick, a Delaware company, which in turn is a wholly-owned subsidiary of a United Kingdom company, nor the facts that Joker's officers and principals operate outside the United States and that it may sell products and produce programs outside the United States through related companies or licensees, creates a bona fide commercial establishment and, thus, a country of origin, outside of the United States for Joker.[7] There is no genuine issue of material fact that Joker is purely and simply a domestic corporation and, thus, does not qualify as a "person" entitled to claim the benefits of Section 44(e).

---

[7] Unlike the appellant in *International Barrier*, *supra*, whose only "bona fide and effective commercial establishment" was in Canada, in this case it is Joker's parent, Lyrick, and Lyrick's parent, HIT, that have a presence in the United Kingdom and elsewhere outside the United States, not Joker.

We turn to the next question we must decide, whether as a matter of law opposer is entitled to judgment because, as opposer claims, the assignment of the applications to a domestic corporation renders these applications, which are based entirely on Section 44, invalid.  We note, first, that *In re De Luxe, supra*, relied upon by applicant, is inapposite because it involves an assignment to another foreign entity, which is not the case herein, and because the issue decided in that case is different from the issue involved here.  *De Luxe* involved a Netherlands company that properly filed its application in the United States with a claim of priority, under Section 44(d), and asserted a basis under Section 44(e).  Only after submitting a copy of its Benelux registration did the Netherlands company assign the U.S. application, but not its Benelux registration, to another foreign entity, De Luxe.  The issue in that case was whether a foreign applicant must be the owner of the asserted foreign registration, on which its U.S. application is based, at the time the U.S. application is approved for publication.  The court concluded "that the language of Section 44 is clear: a foreign applicant must comply with the requirements *at the time the application is filed*; and the language of the statute neither expressly nor impliedly restricts a foreign applicant from freely alienating a U.S. application once the statutory

13

requirements have been met" (*Id.* at 1477, *emphasis in original*). Further, the court noted, in quoting the language of Section 44(c), that "Section 44(b) limits the applicability of Section 44 to those whose country of origin is a party to a convention or treaty to which the United States is also a party, or which extends reciprocal rights to nationals of the United States" (Id., fn. 4). Thus, *De Luxe* dealt only with the situation of an assignment of a U.S. application from one foreign entity to another, while here we have an assignment of a U.S. application from a foreign entity to a U.S. company.

In *Nestle Co., Inc. v. Grenadier Chocolate Co.*, *supra*, relied upon by opposer, the Canadian applicant filed an application in the United States based on its Canadian application, asserting a claim of priority under Section 44(d) with no claim of use in commerce. During the pendency of the U.S. application, applicant assigned the mark and U.S. application to a Delaware corporation. Subsequently, but still prior to publication for opposition, the mark and U.S. application were reassigned to the original Canadian applicant. The question in that case that is relevant herein was whether the application was rendered void by the assignment to the domestic corporation which was not entitled to claim the benefits of Section 44 of the Act. The Board confirmed that a domestic applicant may not

14

register a mark in the United States pursuant to Section 44; that a Section 44-based application is valid only if prosecuted by an applicant entitled to claim the benefits of Section 44; and, thus, an assignment of the application to a domestic entity renders the application invalid and void. The Board concluded, further, that the void application cannot be made valid, subsequent to the assignment, by an amendment to assert dates of use in commerce, or by a reassignment from the domestic entity to the foreign entity. The Board acknowledged that a domestic entity may in appropriate circumstances assert a priority claim under Section 44(d), but must also assert use in commerce as a basis for registration.

We agree with opposer that *Nestle* controls the question herein of whether Joker, a domestic corporation, may rely on the Section 44(e) basis properly asserted by its foreign assignor. Thus, there is no question that the domestic assignee, Joker, may not continue to rely upon the Section 44(e) basis for registration asserted by the original foreign applicant. However, regarding the obvious next question of whether the applications are rendered void by the assignment to Joker, our inquiry does not end with *Nestle*. *Nestle's* holding that such an application must be held void is no longer valid in view of subsequent changes in the law and practice.

15

First, the *Trademark Law Revision Act of 1988*, P.L. 100-667, 102 Stat. 3935 (TRLA), effective on November 16, 1989, permits, in Section 1(b) of the Act, an applicant to assert, as a basis for filing an application, a bona fide intention to use the applied-for mark in commerce. Second, practice changes permitting applicants to add or change the basis for registration post-publication were instituted in *In re Monte Dei Maschi Di Sienna*, 34 USPQ2d 1415 (Com'r. Pats 1995) (applicants may make pre/post publication amendments to add or substitute the basis for registration), and expanded and codified in the *Trademark Law Treaty Implementation Act of 1998* (TLTIA), P. L. 105-330, 112 Stat. 3069, effective on October 30, 1998, which permits applicants to amend or substitute their application basis both before and after publication of a mark for opposition. See 37 C.F.R. §§ 2.35 and 2.133 and Section 806.02 of the *Trademark Manual of Examining Procedure* (*TMEP*), 4th ed. April 2005. The Board confirmed, in *Leeds Technologies Ltd. v. Topaz Communications Ltd.*, 65 USPQ2d 1303 (TTAB 2002), that such an amendment or substitution of application basis was acceptable for applications that are the subject of an opposition proceeding, noting that such amendments to add a post-publication Section 1(b) basis are permissible if there is a continuing valid basis for registration.

Therefore, the applications herein are not void simply because of the assignment to Joker. Joker may file an amendment to substitute an acceptable basis for registration in each application.[8] Further, as previously noted, there is no question as to the validity of the Section 44(d) and (e) claims made by the original applicants herein and, therefore, if Joker submits an appropriate amendment asserting a Section 1 basis for registration of the mark in each application that is valid from the date of the assignments to Joker, the Office would presume a continuing valid basis for registration.[9] As stated in Trademark Rule 2.35(b)(3):

---

[8] Reciting facts from Ms. Slocum's deposition, applicant contends that it is entitled to assert a Section 1(a) basis because it alleges it has used its marks in commerce in the United States. We do not decide the validity of this assertion herein because it is not necessary for a determination of the motion for summary judgment and no motions to amend the basis are now before us.

Likewise, it is not necessary for a determination of the summary judgment motion to determine whether Joker may maintain the assignor's priority filing dates under Section 44(d). We note that if Joker does not retain the priority dates, the applications, should applicant ultimately prevail in these oppositions, will be reexamined under Section 2(d) of the Act. See TMEP §1002.02. See also *In re ETA Systems, Inc*., 2 USPQ2d 1367 (TTAB 1987); and *In re International Barrier Corp., supra*.

In any event, should applicant prevail in these proceedings, republication of the marks will be required. See 37 C.F.R. §§ 2.35(b)(2) and 2.133(a).

[9] We note opposer's assertion that, if applicant were to assert a basis of "intent to use" under Section 1(b), applicant cannot have a continuing valid basis because the current applicant did not have an intent to use the mark at the time the application was filed. However, the law is well established that an assignee stands in the shoes of its assignor. *Gillette Co. v. Kempel*, 254 F.2d 402, 117 USPQ 356 (CCPA 1958).

> When an applicant substitutes one basis for another, the Office will presume that there was a continuing valid basis, unless there is contradictory evidence in the record, and the application will retain the original filing date, including a priority filing date under section 44(d), if appropriate.

Opposer's motion for summary judgment is granted only to the extent that applicant is allowed until thirty (30) days from the mailing date of this order to file a motion with the Board to amend its applications to change the filing basis of these applications, failing which judgment will be entered against applicant and the applications will stand abandoned.

*Order:* Opposer's motion to amend both notices of opposition is granted. Opposer's motion for summary judgment is granted in each opposition only to the extent that applicant is allowed until thirty (30) days from the mailing date of this order to file a motion with the Board to amend its applications to change the basis for registration of these applications, failing which judgment will be entered against applicant and the applications will stand abandoned.

Proceedings otherwise remain suspended. In the event these proceedings are resumed, the Board will take up applicant's pending motion to amend its identification of goods, applicant will be allowed time to file answers to the

18

amended notices of opposition and trial dates, including time for discovery, will be reset.