Wolfson

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

THIS OPINION IS A
PRECEDENT OF THE T.T.A.B.

Mailed: February 9, 2009

Opposition No. **91181129**

FRANPOVI, S.A.

v.

ROSALINDA WESSIN and DANIEL
PENA

**Before Grendel, Drost and Wellington,
Administrative Trademark Judges.**

By the Board:

Franpovi, S.A. ("opposer") has filed an opposition to registration of the mark POLLOS VICTORINA, for "fast-food restaurants,"[1] filed by Rosalind Wessin and Daniel Pena ("applicants"). Opposer alleges that it is a joint stock company organized and existing under the laws of the Dominican Republic; that it owns valid registrations for the mark POLLOS VICTORINA for restaurant services in the Dominican Republic; and that, *inter alia,* it is entitled to prevent applicants' registration of their mark under the terms of the *Convention for the Protection of Commercial, Industrial and Agricultural Trade Marks and Commercial Names* (the "Santiago Convention"), 44 Stat. 2494, Apr. 28, 1923.

Opposition No. **91181129**

Opposer further asserts that it has filed for and been refused registration of its mark POLLOS VICTORINA SABOR A TI[2] in the United States.[3]

Applicants filed an answer to the notice of opposition, admitting that they have not used their mark in the United States or elsewhere in connection with restaurant services and admitting that they were aware, at the time they filed their application, of opposer's "limited rights existing solely within the boundaries of the Dominican Republic to the POLLOS VICTORINA mark." Applicants deny the remaining salient allegations of the complaint.

On April 23, 2008, the parties held a discovery conference under Trademark Rule 2.120 and Fed. R. Civ. P. 26, before a Board interlocutory attorney. During the conference, the Board approved a bifurcation of the issues in this proceeding. The parties were allowed to conduct initial discovery regarding the rights asserted by opposer under the Santiago Convention without curtailing their

---

[1] Serial No. 77599842, filed April 1, 2005 on the basis of applicants' bona fide intent to use the mark in commerce.
[2] Serial No. 77096473, filed February 1, 2007 on the basis of applicants' bona fide intent to use the mark in commerce, seeks registration of the mark for "restaurant services."

[3] An additional claim was asserted by opposer in the notice of opposition that opposer has called the "foreign famous mark" doctrine, which is also known as the well-known mark doctrine. Under the claim, opposer asserts that its mark, while as yet unused in the United States, has become so well-known here that it may not be registered by another. Opposer asserts priority based on such status and a likelihood of confusion between the marks.

2

future rights to conduct discovery on opposer's self-described "foreign famous mark claim" (see fn. 3). The Board indicated that it would entertain motions for summary judgment on opposer's claim under the Santiago Convention, following the close of this focused discovery.

The parties have now filed cross-motions for summary judgment on opposer's claim under the Santiago Convention. The motions are fully briefed.

This is a case of first impression. The parties have not cited, and we have not located, relevant case law addressing the provisions of the Santiago Convention. For the reasons discussed below, we hold that opposer may not avail itself of the rights provided by the Santiago Convention and accordingly grant applicants' motion for summary judgment on that claim.

Legal Standard for Summary Judgment

A motion for summary judgment is a pretrial device, intended to save the time and expense of a full trial when a party is able to demonstrate, prior to trial, that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); TBMP § 528.01 (2d ed. rev. 2004). To prevail on its motion, the moving party must establish that there is no genuine issue of material fact in dispute, thus leaving the claim to be resolved as a matter of law. See *Celotex Corp. v.*

*Catrett,* 477 U.S. 317 (1986); *Opryland USA Inc. v. Great American Music Show Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992); and *Sweats Fashions Inc. v. Pannill Knitting Co. Inc.,* 833 F.2d 1560, 4 USPQ2d 1793, 1795 (Fed. Cir. 1987). The Board may not resolve issues of material fact, but can only ascertain whether genuine disputes exist regarding such issues. The evidence on summary judgment must be viewed in a light most favorable to the non-movant and all justifiable inferences are to be drawn in the non-movant's favor. See *Lloyd's Food Products, Inc. v. Eli's, Inc.*, 987 F.2d 766, 767, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); *Opryland USA,* 23 USPQ2d at 1472. Because the parties have filed cross motions for summary judgment, we have made such inferences with respect to both opposer and applicants.

The Santiago Convention

The Santiago Convention, signed by the United States at Santiago, Chile on April 28, 1923, was established to protect "commercial, industrial or agricultural" trademarks registered by persons domiciled in any of the contracting States. See Article I Section 1. It was ratified by the United States in 1925 and entered into force in 1926, after having been ratified by one-third of the signatory States. Most parties thereafter joined the *General Inter-American Convention for Trade-Mark and Commercial Protection,* 46 Stat. 2907, Feb. 20, 1929 (the "Pan-American Convention"),

which superseded the Santiago Convention as between contracting parties. The United States has joined the Pan-American Convention. However, the Dominican Republic has not. The Santiago Convention has not therefore been replaced by the Pan-American Convention as between the Dominican Republic and the United States.

While no court has declared the Santiago Convention to be self-executing, for purposes of deciding the parties' motions for summary judgment we have assumed, without deciding, that it is a self-executing treaty. *Cf. Bacardi Corp. of America v. Domenech,* 311 U.S. 150, 161, 47 USPQ 350, 355 (1940). In any event, the Board has jurisdiction under Section 13 of the Trademark Act to decide issues of registrability of marks in trademark opposition proceedings, and Article V Sections 1 and 2 of the Santiago Convention expressly relate to the registrability of marks in proceedings brought under the treaty against registration of a mark in the United States. *Cf. Diaz v. Servicios De Franquicia Pardo's S.A.C.*, 83 USPQ2d 1320, 1326 (TTAB 2007); *British-American Tobacco Co. v. Philip Morris Inc.*, 55 USPQ2d 1585, 1589 (TTAB 2000).

The Santiago Convention provides, *inter alia,* a mechanism for a domiciliary of one signatory country to prevent the registration of its mark to another claimant in another signatory country. Section 2 of Article V provides

the grounds for challenging the claimant's application for registration:

> When refused protection under this Convention in a signatory State because of prior registration or a pending application for registration, the proprietor of a mark claiming recognition of rights under this Convention shall have the right to seek and obtain the cancellation[4] of the previously registered mark, upon proving, according to the procedure by law of the country where cancellation is sought, such refusal, and either:
>
>> (a) That he had legal protection for his mark in any of the contracting States before the date of application for the registration which he seeks to cancel; or
>>
>> (b) That the registrant had no right to the ownership, use or employment of the registered mark at the date of its deposit; or
>>
>> (c) That the mark covered by the registration which he seeks to cancel has been abandoned.

Article V Section 2 must be read in conjunction with Article I Section 1.  That Article provides:

> Section 1.  The High Contracting Parties agree that any commercial, industrial or agricultural trade-mark registered or deposited in any of the States signatory of the Convention, by a person domiciled in any of such States, … may obtain in the other signatory States the same protection granted by them to the marks registered or deposited in their own territory, … provided that the formalities and conditions required by the

---

[4] Although Section 2 describes rights of cancellation only, for reasons explained *infra* we interpret the provision as extending to qualifying foreign domiciliaries the additional right to oppose a mark filed in a signatory State.

> domestic laws of each Stat, as well as the following requirements, are complied with:
>
> a) Any person interested in the registration or deposit of the mark shall present to the proper Inter American Bureau through the proper office of the State of first registration or deposit, an application for recognition of the rights claimed, in accordance with the requirements prescribed in the Appendix of this Convention, which is declared to be a part hereof.
>
> b) He shall pay, … a fee equivalent in value to fifty dollars ($50.00) United States gold…. Such fee shall be used to cover the expenses of the said Inter American Bureau.

An intrinsic component of the rights accorded under Article V is compliance with the conditions of Article I. Thus, before a person may successfully oppose a mark in the United States based on the treaty, it must show that it is domiciled in one of the signatory states; that it owns a valid registration for its mark in its home state; that it has complied with the formalities and conditions required by the domestic law of the state in which it is claiming rights; and that it has applied for protection through its home state to one of the Inter American Bureaus ("IAB" or "Bureau") and paid the appropriate fee.

Opposer cannot meet these conditions. Specifically, because there is no longer a functioning IAB with which to apply for protection, opposer cannot comply with all of the conditions precedent to bringing an opposition of a mark in the United States under the treaty. While an IAB was

7

established in the city of Havana, Cuba, it ceased functioning on November 2, 1949. The second Bureau, contemplated by the treaty to be established in Rio de Janiero, Brazil, was never opened. Yet the requirement that a claimant file for protection through the Bureau has never been superseded, nor has it lapsed or been replaced.

The Bureau's functioning is integral to the treaty's purpose. The primary duty of the Bureau was to keep a detailed record of applications for protection under the Santiago Convention received through the national offices of registration in each country, and to communicate particulars of the applications to each of the contracting states. This function ensured that the nationals of each contracting state had access to a register, kept by their own state's trademark office, of those registrations that had been deposited with an IAB. Without the IAB notification system, all marks would automatically be subject to protection in all member States of the Santiago Convention merely upon registration thereof in the applicant's home country. Such result would seriously undercut the scheme of protective measures created by the treaty and does not appear to have been intended by the Santiago Convention signatories. In contrast, the Pan-American Convention, which superseded the Santiago Convention as between contracting nations (including those that had joined the Santiago Convention

8

initially), requires prior notification of a party's rights, either by filing with a Bureau or directly with the state in which the foreign national desires to assert its rights. *See Pan-American Convention*, Chapter II Article 2. An additional safeguard was added to the Pan-American Convention, that of a knowledge requirement, which was designed to protect national rights against foreign registrants. *Id.,* Chapter II Article 7.

Given that the requirement of application to the Bureau cannot be read out of the treaty, the rights established by the Santiago Convention cannot be exercised by a potential plaintiff because it cannot fulfill the condition of application to the IAB. Opposer's non-compliance with the unambiguous terms of the treaty prevents it from obtaining relief under the treaty.

In view thereof, there are no material facts in dispute that opposer cannot avail itself of any of the rights described in the treaty and summary judgment may be entered as a matter of law. Accordingly opposer's motion for summary judgment is denied and applicant's motion for summary judgment is granted on the Santiago Convention claim. This case will go forward on the remaining claim under the foreign famous/well-known mark doctrine. We have made no determination regarding the sufficiency or applicability of this claim.

Trial dates, including disclosure dates and the close of discovery, are reset as indicated below.

| | |
|---|---|
| Initial Disclosures Due | **4/13/09** |
| Expert Disclosures Due | **8/11/09** |
| Discovery Closes | **9/10/09** |
| Plaintiff's Pretrial Disclosures Due | **10/25/09** |
| Plaintiff's 30-day Trial Period Ends | **12/9/09** |
| Defendant's Pretrial Disclosures Due | **12/24/09** |
| Defendant's 30-day Trial Period Ends | **2/7/10** |
| Plaintiff's Rebuttal Disclosures Due | **2/22/10** |
| Plaintiff's 15-day Rebuttal Period Ends | **3/24/10** |

**IN EACH INSTANCE,** a copy of the transcript of testimony, together with copies of documentary exhibits, must be served on the adverse party within **thirty days** after completion of the taking of testimony.  Trademark Rule 2.125.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b).  An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.