THIS OPINION IS A
PRECEDENT OF THE
T.T.A.B.

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

MBA

Mailed:  August 31, 2010

Opposition No. 91187118

Amazon Technologies, Inc.

v.

Jeffrey S. Wax

**Before Walters, Zervas and Wellington, Administrative Trademark Judges**

**By the Board:**

This case now comes up for consideration of opposer's motion for summary judgment, filed November 25, 2009, and applicant's motion for sanctions, originally filed January 11, 2010 and re-filed in amended form on January 25, 2010. Both motions are fully briefed.

Background and Undisputed Facts

Pro se applicant, an attorney, seeks registration of AMAZON VENTURES, in typed form, for "investment management, raising venture capital for others, investment consultation, and capital investment consultation."[1] Applicant was originally a co-owner of the application with

---

[1]    Application Serial No. 78001126, filed March 27, 2000, based on an alleged intent to use the mark in commerce.

Mr. Steven M. Freeland, also an attorney, but Mr. Freeland purported to assign "the entire right, title and interest in and to" the mark and application to Mr. Wax via a "Trademark Assignment" dated October 20, 2008.[2]

In its now-operative amended notice of opposition, opposer alleges prior use and registration[3] of AMAZON and variations thereof for a wide variety of goods and services, including "goods and services related to finance and financing," and that use of applicant's mark is likely to cause confusion with, and dilute, opposer's marks. As additional grounds for opposition, opposer alleges: (1) that Messrs. Wax and Freeland "have not had a continuing bona fide intention to use Applicants' Mark in connection with Applicants' Services throughout the registration process," including as of the filing date of the application, and therefore the involved application is void; and (2) that "[a]n ongoing and existing business pertaining to Applicants' Mark did not exist as of" the

---

[2] The assignment was recorded with the Office on June 17, 2009 at Reel 4007, Frame 0486.

[3] See, e.g., Registration No. 3411872 for AMAZON.COM, in typed form, issued April 15, 2008 from an application filed November 11, 1999 for "credit card services; and charge card services;" and Registration No. 2518043 for AMAZON.COM AUCTIONS, in typed form with AUCTIONS disclaimed, issued December 11, 2001 from an application filed March 29, 1999 for "commodity trading for others." Some of opposer's other pleaded registrations are over five years old.

date of the assignment, an ongoing and existing business "was not assigned along with Applicants' Application" and "[t]here was no goodwill in Applicants' Mark" on the date of the assignment, and therefore the application was "assigned in gross" and void under Section 10 of the Act. Applicant denies the salient allegations in the amended notice of opposition.

Discovery Dispute

Opposer filed its motion for summary judgment before applicant filed his motion for sanctions. Ordinarily, motions filed subsequent to an outstanding potentially dispositive motion which are not related thereto will not be considered. However, it is appropriate in this case to consider the motion for sanctions and to address it first in this order because it pertains to a discovery dispute between the parties that pre-dates opposer's motion for summary judgment.

Previously, on November 4, 2009, the Board issued an order (the "Prior Order") granting applicant's motions to compel and to test the sufficiency of opposer's responses to applicant's requests for admission. The Prior Order found that opposer's discovery responses were insufficient, allowed opposer 30 days to supplement its responses to applicant's discovery requests without objection on the

merits and reopened discovery for applicant only.  On December 7, 2009, the Board denied opposer's motion for reconsideration of the Prior Order, but because opposer's motion tolled its deadline for complying with the Prior Order, opposer was allowed an additional 20 days to serve its supplemental discovery responses without objection on the merits.  The Board also imposed a "meet and confer" requirement for all further pre-trial motions filed by either party.

On December 28, 2009, opposer timely served its written supplemental discovery responses, along with a DVD containing 31,135 pages of documents.[4]  Applicant then filed his original motion for sanctions, claiming that the supplemental responses are insufficient and, thus, opposer has violated the Board's order.  However, because there was some question regarding whether applicant adequately met and conferred to resolve the discovery dispute in advance of filing his original motion for sanctions, the Board, in

---

[4]    Pursuant to the Board's order of December 7, 2009, the due date for opposer's responses was December 27, 2009, a Sunday; thus, the responses were timely served on Monday, December 28, 2009.  Despite applicant's complaint that he received these documents substantially after the date of the certificate of service, there is no dispute that applicant actually received the responses and DVD, and the delay is minimal and not prejudicial to applicant.  Furthermore, while applicant complains that in response to certain discovery requests opposer merely stated that it "will produce" responsive documents, there is no dispute that opposer did produce certain documents, via the DVD.

its orders of January 14 and 21, 2010, required the parties to confer further, and opposer agreed to further supplement its discovery responses, which opposer did on January 20, 2010. Applicant's amended motion for sanctions followed.

Applicant's Amended Motion for Sanctions

Applicant claims that "Opposer's DVD of voluminous materials presents an undue burden," because the documents are neither indexed, produced as kept in the ordinary course of business nor in chronological order. Furthermore, in response to Document Request Nos. 17, 19, 25 and 26, opposer referred applicant to 31,144 pages "without an index," and in response to Document Request Nos. 23 and 24 and Interrogatory Nos. 2 and 4, all of which address opposer's applications for AMAZON marks and the identification of goods and services therein, opposer referred applicant to 17,487 pages, also without an index. "Applicant submits that Opposer has failed to provide sufficient detail to enable Applicant to locate and identify the responsive documents as readily as Opposer." With respect to Interrogatory Nos. 6, 18 and 23-28, applicant contends that opposer improperly designated its responses as "trade secret/commercially sensitive" under

the Board's standard protective order.[5] Applicant requests judgment as a sanction, or in the alternative lesser sanctions, including that opposer be required to provide a detailed index to the DVD and that the discovery period for applicant alone, which closed January 21, 2010, be reopened to allow applicant additional time for follow-up discovery.

Opposer claims in response that it "specifically identified by Bates-number each document or range of documents corresponding to each of the categories in Applicant's document requests," and that it was therefore not required to produce the documents in chronological order or as kept in the ordinary course of business. Opposer does not address applicant's allegation that it improperly designated certain information as "trade secret/commercially sensitive," other than by pointing out that it produced the allegedly "trade secret/commercially sensitive" information one business day after receiving a copy of the Board's standard protective order signed by applicant's outside counsel.[6] Opposer argues that to the

---

[5]    While applicant also contends that he had not received these "trade secret/commercially sensitive" materials as of the filing date of applicant's amended motion for sanctions, opposer claims that it produced the responses on the day applicant filed his amended motion, and in his reply brief, applicant does not dispute opposer's claim.

[6]    While applicant is representing himself pro se, he retained an outside attorney solely for the purpose of reviewing opposer's

extent it identified large numbers of documents responsive to certain discovery requests, this was merely a function of the requests being extremely broad.  Opposer concedes that it identified over 17,000 pages in response to Interrogatory Nos. 2 and 4, which merely requested opposer to identify its applications and marks used, registered or applied-for in connection with finance or investment-related services.  Opposer claims, however, based on the declaration of its Associate General Counsel, that "[t]he only way to identify the applications or marks (if any) meeting the criteria set forth in these interrogatories is to review the file histories of [all of] Opposer's applications.  Opposer does not have any type of database that would allow it to identify such applications or marks."  Declaration of Kathryn Sheehan ¶ 3.  Opposer contends that "the burden of reviewing the file histories is the same for both Opposer and Applicant."

In his reply brief, applicant argues that sanctions are appropriate because opposer "had months of opportunity to request signatures on a Protective Order before it was required to substantively respond to discovery.  Opposer's request for signatures on a Protective Order was sent on

---

"trade secret/commercially sensitive" information and documents pursuant to the protective order.

January 20, 2010 … although Opposer's discovery responses were due on December 28, 2009." Applicant also points out that opposer had no trouble pleading ownership of certain of its registrations in its amended notice of opposition, and claims that opposer "should similarly have the ability to identify its own specific marks responsive to" Interrogatory Nos. 2 and 4.

"If a party fails to comply with an order of the [Board] relating to discovery … the Board may make any appropriate order, including any of the orders provided in Rule 37(b)(2) of the Federal Rules of Civil Procedure …." Trademark Rule 2.120(g)(1); see also, M.C.I. Foods Inc. v. Bunte, 86 USPQ2d 1044, 1047 (TTAB 2008); HighBeam Marketing LLC v. Highbeam Research LLC, 85 USPQ2d 1902, 1904 (TTAB 2008).

Here, because opposer no longer claims that it produced the 31,144 pages of documents as kept in the ordinary course of business, we find that opposer's supplemental discovery responses violate the Prior Order. Specifically, opposer was required to "organize and label [its produced documents] to correspond to the categories" in applicant's requests. Fed. R. Civ. P. 34(b)(2)(E)(i). While we agree with opposer that many of applicant's

discovery requests are quite broad,[7] opposer's identification of 31,144, or even 17,487, pages of documents in response to a particular discovery request with no index or guide to the tens of thousands of pages is improper.  Indeed, Fed. R. Civ. P. 34 "was amended in 1980 because of a concern that litigants were deliberately mixing critical documents with masses of other documents to hide their existence or obscure their significance."  In re Sulfuric Acid Antitrust Litigation, 231 F.R.D. 351, 363 (N.D. Ill. 2005); 1980 Advisory Committee Note to Fed. R. Civ. P. 34(b).  Now, Fed. R. Civ. P. 34(b) requires parties to "organize and label" documents which are not produced as kept in the ordinary course of business.  Wagner v. Dryvit Systems, Inc., 208 F.R.D. 606, 610 (D. Neb. 2001) ("Dryvit asserts that directing plaintiffs to find the discovery among volumes of irrelevant information complies with Federal Rules of Civil Procedure.  To the contrary, producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34"); Stiller v. Arnold, 167 F.R.D. 68, 71 (N.D. Ind. 1996) ("Producing 7,000 pages of documents in no apparent order

---

[7]    For example, in Document Request No. 19, applicant requests "[a]ll documents and things which support or tend to support Opposer's contentions and allegations in its Notice of Opposition."

does not comply with a party's obligation under Rule 34(b)"); see also, <u>Ak-Chin Indian Community v. United States</u>, 85 Fed. Cl. 397 (Ct. Cl. 2009).  In this case, opposer's unindexed document production violated Rule 34(b).

Furthermore, it is crystal clear, without having to review the produced documents themselves, that some of opposer's responses constituted a textbook "document dump." Indeed, applicant's Document Request No. 25 requests "documents and things which evidence, refer, or relate to Opposer having sent, or caused to be sent, any notices, mailings, or communications of any kind to Applicants from Opposer, or from anyone on Opposer's behalf, regarding any objection or protest of any kind by Opposer to Applicant's Mark, or Applicants' use of Applicants' Mark … ."  In response, opposer identified <u>all 31,144 pages</u> of its produced documents.  We know, because both parties make the point, that thousands of pages of opposer's produced documents comprise the file histories of opposer's applications, and while those file histories may arguably be tangentially related to opposer's communications to applicant, identifying all of them, <u>without an index</u>, in response to Document Request No. 25 is an example of game-playing rather than compliance with the Prior Order.

Indeed, it does not appear that opposer even identified by Bates number any particular letter, e-mail or other communication.

Furthermore, while it has been asserted, to our surprise, that opposer "does not have any type of database that would allow it to identify" its own applications or registrations identifying finance-related services, we note that this statement carefully avoids indicating whether counsel maintains such records for opposer. Moreover, we agree with applicant's contention that, under the circumstances of this case and given the discovery requests and responses before us, opposer's burden in identifying certain of its own applications and registrations as meeting certain criteria is substantially less than applicant's in this case, even if no database exists.

Because opposer did not fully comply with the Prior Order, applicant's motion for sanctions is hereby **GRANTED**.[8] Applicant requests the ultimate sanction of judgment in its favor, but because opposer made substantial efforts to comply with the Prior Order in some respects, including by producing many documents and preparing extensive narrative responses to some of applicant's interrogatories, entering

11

judgment in applicant's favor is inappropriate at this time.  Lesser sanctions are appropriate, however.  Specifically:

- within **THIRTY DAYS** of the mailing date of this order, opposer is ordered to serve on applicant a complete index to all 31,144 pages of produced documents, cross-referencing the categories of documents and the discovery requests to which they are responsive, with no category in the index to exceed 300 pages;[9]

- within **THIRTY DAYS** of the mailing date of this order, opposer is ordered to fully respond to Interrogatory Nos. 2 and 4 in narrative form, providing serial and registration numbers as appropriate and fully identifying any responsive common law marks; and

- the discovery period for applicant only is reopened as set forth herein.

In the event opposer fails to comply with the requirements of this order, judgment will be entered in applicant's favor and against opposer on all of opposer's claims.  In view of the circumstances of this case, opposer's time for

---

[8]     Based on an *in camera* review of opposer's "trade secret/commercially sensitive" responses, we find that the materials were not improperly designated.
[9]     To be clear, assuming that the file histories of opposer's applications, or other categories of produced documents, exceed 300 pages, opposer must logically subdivide these categories in its index, with no sub-category exceeding 300 pages.

complying with its discovery obligations is set by this order and will not be further extended. Furthermore, under Trademark Rule 2.120(i)(2), where resolution of discovery or other interlocutory issues "would likely be facilitated by a conference in person of the parties or their attorneys," the Board may "request that the parties or their attorneys … meet with the Board at its offices" for a conference. If the parties remain unwilling or unable to work together cooperatively and efficiently, the Board will not hesitate to invoke this Rule in the future.

Opposer's Motion for Summary Judgment

Based primarily on applicant's written discovery responses and the deposition testimony of original joint applicants Wax and Freeland, opposer seeks summary judgment on its claims that: (1) joint applicants did not have a continuing bona fide intention to use their mark for the identified services throughout the registration process; and (2) the assignment violated Section 10 of the Act. With respect to its claim that applicants did not have a joint bona fide intention to use, opposer relies on the following evidence:

- Mr. Wax testified that the "applicant" is a "business" named "Amazon Ventures;" Deposition of Jeffrey S. Wax, July 22, 2009,

attached to Opposer's Motion as Ex. G ("Wax Tr.") p. 16;

- Amazon Ventures has not charged for any services since 2003, never had a business plan, never paid taxes and never advertised; Wax Tr. p. 72-73, 83, 120, 156;

- Amazon Ventures owns no tangible or intangible assets or intellectual property; Id. p. 162;

- Mr. Freeland has not been involved in "any business" since 2001 other than a baby toy "startup;" Deposition of Steven M. Freeland, July 20, 2009, attached to Opposer's Motion as Ex. H ("Freeland Tr.") pp. 15-18;

- As of June 10, 2008, four months before the assignment, Mr. Freeland did not have any intent to offer goods or services under the mark AMAZON VENTURES; Freeland Tr. p. 76;

- Mr. Freeland testified that the joint applicants' intent when filing the application "was to provide a vehicle for licensing and sale of patents," through the amazonventures.com Web site; Id. p. 47; see also, Declaration of Susan M. Natland in Support of Opposer's Motion Ex. F (applicant's response to opposer's Interrogatory No. 4); and

- Mr Freeland testified that he did not work with Mr. Wax on any common clients or projects between 2001 and 2008; Freeland Tr. pp. 14-15, 42; see also, Wax Tr. pp. 155-56.

With respect to its claim that the assignment was invalid under Section 10, opposer relies on the following evidence:

- The October 20, 2008 Trademark Assignment from Freeland to Wax assigned only "the entire right, title and interest in and to [AMAZON VENTURES], together with any goodwill symbolized by the mark, the right to sue for and recover all damages and other remedies in respect of any infringement of the mark which may have occurred prior to the date of this Assignment, and the above identified mark and Trademark application;" Natland Dec. Ex. A;

- Mr. Freeland was unaware of any goodwill associated with AMAZON VENTURES other than the "amazonventures.com" Web site; Freeland Tr. p. 107;

- Mr. Freeland testified that he did not assign any assets other than the trademark application to Mr. Wax; Id. p. 188; and

- Amazon Ventures owns no tangible or intangible assets or intellectual property; Wax Tr. p. 162.

Opposer argues that "there was no ongoing and existing business, let alone an ongoing joint business of Applicants, to transfer with Applicants' ITU Application at the time of the Assignment.  Since an Amendment to Allege Use had not been filed in connection with Applicants'

15

Application, the Assignment violates Section 10 and the Application is void."

Applicant argues in response that the question of joint applicants' intent to use the mark is "particularly unsuited to resolution by summary judgment," and that opposer "presents no authority including statutory law or case law to support its assertion that an application is void if there is not a joint bona fide intention to use the subject trademark throughout the registration process" (emphasis in original). Applicant claims that he has the capacity to provide the services identified in his application, and points out that he registered the domain name "amazonventures.com" in 2000, and operated a Web site accessible at that address. Applicant also relies on the following declaration testimony regarding his alleged use of, or intention to use, AMAZON VENTURES:

- Randy Sekerez, President of Sekerez Group, a land surveying and planning company, testifies that he consulted with "Amazon Ventures" in 2000, 2003 and 2008 "to assist with raising capital from venture capital firms … [and] with management of capital potentially received …," and "would again retain their services and recommend Amazon Ventures to others seeking investment capital and assistance with management of related financial matters;"

Declaration of Randy Sekerez ("Sekerez Dec.") ¶¶ 2-5;

- Mike Muncy testifies that he was referred to Mr. Wax and "Amazon Ventures" by Mr. Freeland, that he consulted with Mr. Wax "in regard to seeking patent protection," that he "was also interested in having Amazon Ventures assist with raising capital …," and that he "would again retain their services and recommend Amazon Ventures to others seeking investment capital and assistance with management of related financial matters;" Declaration of Mike Muncy ("Muncy Dec.") ¶¶ 2-7; and

- Marilyn Cleeff, a financial advisor, testifies that since 2000 she and Mr. Wax "discussed the services that are provided, and that are intended to be provided, by Amazon Ventures," including finance and investment-related services. Affidavit of Marilyn Cleeff ¶¶ 2-5.

Applicant further claims, notwithstanding the written assignment, that in 2001 "Steven Freeland had decided that he was out of the business and had transferred his rights in the business and trademark application" to Mr. Wax. According to applicant, "[t]he formal assignment document was executed when needed." Furthermore, applicant argues that "an assignment from one joint-Applicant (Steven M. Freeland) to another joint-Applicant (Jeffrey S. Wax) is not 'trafficking' of a mark," which is what Section 10 of

17

the Act is intended to prevent, and that "Jeffrey S. Wax is *more than* a successor to joint Applicant's (sic) business, since Jeffrey S. Wax is an original Applicant for Applicant's mark" (emphasis in original). Finally, applicant essentially cross-moves for summary judgment in his favor, presumably on both of the claims on which opposer seeks summary judgment.[10]

Summary judgment is appropriate where there are no genuine issues of material fact in dispute, thus allowing the case to be resolved as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. See, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Sweats Fashions, Inc. v. Pannill Knitting Co. Inc., 833 F.2d 1560, 4 USPQ2d 1793, 1796 (Fed. Cir. 1987). A factual dispute is genuine if, on the evidence of record, a reasonable fact finder could resolve the matter in favor of the non-moving party. See, Opryland USA Inc. v. Great American Music Show Inc., 970 F.2d 847, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992); Olde Tyme Foods,

---

[10] Opposer filed a reply brief in which it restates its original arguments. Opposer also moves to strike certain documents related to the "amazonventures.com" domain name submitted in support of applicant's opposition to opposer's motion for summary judgment. Opposer's motion to strike is hereby **GRANTED** because the documents are unauthenticated. They have therefore been given no consideration.

Inc. v. Roundy's, Inc., 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992).

The evidence on summary judgment must be viewed in a light most favorable to the non-movant, and all justifiable inferences are to be drawn in the non-movant's favor. Lloyd's Food Products, Inc. v. Eli's, Inc., 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); Opryland USA, supra. The Board may not resolve issues of material fact; it may only ascertain whether issues of material fact exist. See, Lloyd's Food Products, 987 F.2d at 766, 25 USPQ2d at 2029; Olde Tyme Foods, 961 F.2d at 200, 22 USPQ2d at 1542. The mere fact that cross-motions for summary judgment have been filed does not necessarily mean that there are no genuine issues of material fact, or that a trial is unnecessary. See, University Book Store v. University of Wisconsin Board of Regents, 33 USPQ2d 1385, 1389 (TTAB 1994).

With respect to opposer's claim that joint applicants Wax and Freeland did not have a continuing bona fide intention to use their mark for the identified services throughout the registration process, we find on the record presented that there are genuine issues of material fact remaining for trial. At a minimum, viewing the deposition testimony of Messrs. Wax and Freeland, and the Declarations of Messrs. Sekerez and Muncy, in a light most favorable to

applicant, genuine issues of material fact exist as to whether the original joint applicants, and the current applicant, had or have a bona fide intention to use AMAZON VENTURES for the identified services.

With respect to opposer's claim that the assignment violated Section 10 of the Act, we find that there are no genuine issues of material fact remaining for trial and that this claim may be resolved as a matter of law. Pursuant to the "Trademark Assignment," original joint applicant Mr. Freeland purported to assign to the other original joint applicant, Mr. Wax, "the entire right, title and interest in and to" AMAZON VENTURES and the involved application for registration of the mark. Under Section 10, 15 U.S.C. § 1060(a)(1), no application under Section 1(b) "shall be assignable" prior to the filing of an amendment to allege use or statement of use "except for an assignment to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing." An "assignment" is defined as "[a] transfer or making over to another the whole of any property …" (emphasis supplied). Black's Law Dictionary 62 (5th ed. abridged 1983); see also, 6 Am. Jur. 2d Assignments § 1 (2010).

In this case, there was no transfer to "another," as Mr. Wax was an original joint applicant and is now the sole remaining applicant.[11] In fact, the "Trademark Assignment" in this case was more akin to a change in the type of entity which owned the application than to a traditional assignment of a mark from one unrelated party to another.[12]

We further note that the purpose of Section 10 is to "prevent the trafficking in marks which are the subjects of intent-to-use applications." The Clorox Co. v. Chemical Bank, 40 USPQ2d 1098, 1104-06 (TTAB 1996). There is no "trafficking" in the mark herein, where the sole owner of the application after the assignment was an owner of the application before the assignment.[13]

---

[11] Huang v. Tzu Wei Chen Food Co. Ltd., 849 F.2d 1458, 7 USPQ2d 1335 (Fed. Cir. 1988) is inapposite. In that case, an individual owned the mark at the time he mailed the application asserting himself as the owner. But, by the time of receipt by the USPTO, his corporation came into existence and, by its terms assumed ownership of the mark and application. The Court concluded that the application was void because on the filing date the proper owner was the corporation. Unlike in Huang, in the case before us the original joint applicants were the owners of the application at the time it was filed and the assignment at issue occurred long after the filing date.

[12] "The terms 'joint applicant(s)' or 'joint owner(s)' reflects the relationship of multiple applicants as to a particular mark, but does not identify a particular type of legal entity in the United States." TMEP § 803.03(d) (6th ed. 2010).

[13] Furthermore, during the legislative process leading up to the enactment of the relevant provisions of Section 10, there was a proposal to include the following provision therein:

> No certificate of registration may be issued to a related company of the applicant if the application was filed

21

In short, the assignment from one joint applicant to another, where the assignee joint applicant was and remains an owner of the application, is more in the nature of a "relinquishment" of ownership rights by one of the joint owners than a true "assignment" to a different legal entity and, thus, it is not prohibited under Section 10 of the Trademark Act. Accordingly, opposer's motion for summary judgment on its Section 10 claim is hereby **DENIED**, and applicant's cross-motion for summary judgment on that claim is hereby **GRANTED**. Opposer's claim that the assignment violated Section 10 is hereby **DISMISSED, WITH PREJUDICE**.

Conclusion

Applicant's motion for sanctions is granted to the extent that opposer must further supplement its discovery responses as set forth herein and discovery is reopened for applicant only. Opposer's motion for summary judgment is denied and applicant's cross-motion for summary judgment is granted on opposer's claim that the assignment violated

---

> under section 1(b), if the use in commerce relied upon in the affidavit of use was use by the related company and if, at the time such use was made, there was an agreement between the applicant and the related company that the mark should be assigned to the related company.

Clorox, at 1105 and n. 16. This proposal "was dropped in the compromise version" of the bill which ultimately "became the Trademark Law Revision Act of 1988." Id.

Section 10.  Proceedings herein are resumed, and discovery, disclosure, trial and other dates are reset as follows:

| | |
|---|---|
| Follow-Up Discovery Period for Applicant Only Closes | **October 4, 2010** |
| Plaintiff's Pretrial Disclosures | **November 18, 2010** |
| Plaintiff's 30-day Trial Period Ends | **January 2, 2011** |
| Defendant's Pretrial Disclosures | **January 17, 2011** |
| Defendant's 30-day Trial Period Ends | **March 3, 2011** |
| Plaintiff's Rebuttal Disclosures | **March 18, 2011** |
| Plaintiff's 15-day Rebuttal Period Ends | **April 17, 2011** |

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony.  Trademark Rule 2.l25.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b).  An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29.

***