THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

Elgin

August 23, 2022

Opposition No. 91269739

*NPG Records, LLC (substituted for NPG Records, Inc.)*; *and Paisley Park Enterprises, LLC (substituted for Comerica Bank & Trust, N.A.)*[1]

*v.*

*JHO Intellectual Property Holdings LLC*

**Before Kuczma, Adlin, and Johnson,**
**Administrative Trademark Judges.**

**By the Board:**

---

[1] Opposer NPG Records, Inc., an original opposer, was converted from a corporation to a limited liability company and changed its name to NPG Records, LLC ("NPG"). On April 18, 2022, Opposers filed a motion to change the caption of the proceeding to substitute NPG Records, LLC for NPG Records, Inc. 9 TTABVUE. Inasmuch as Applicant filed no opposition, the motion is **granted** as conceded. Trademark Rule 2.127(a), 37 C.F.R. § 2.127(a).

On July 27, 2022, Opposers filed a motion to substitute Paisley Park Enterprises, LLC ("Paisley Park") for Comerica Bank & Trust, N.A. ("Comerica") (as representative of the Estate of Prince Rogers Nelson) in light of the June 24, 2022 assignment of Mr. Nelson's rights of publicity from the Estate to Paisley Park. 10 TTABVUE. After being contacted by the Board, Opposers filed an amended motion with the missing declaration of Andrea Bruce and a copy of the assignment on July 29, 2022, indicating that Applicant does not oppose the motion. 11 TTABVUE. In view thereof, the filing at 10 TTABVUE is given no further consideration, and the amended motion to substitute is **granted**. The proceeding caption has been updated to reflect these substitutions. We maintain the language used by the parties, where appropriate.

Record citations are to TTABVUE, the Board's publicly available docket history system. *See, e.g.*, *New Era Cap Co. v. Pro Era, LLC*, 2020 USPQ2d 10596, at *2 n.1 (TTAB 2020).

This case comes up for consideration of Opposers' motion (filed January 14, 2022) for partial summary judgment on their claim of false suggestion of a connection under Section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a), and motion to strike or for summary judgment on Applicant's affirmative defenses of "unclean hands, laches, estoppel, acquiescence, and fraud."[2] FED. R. CIV. P. 56.[3] The motion is timely and fully briefed.

We have considered the parties' briefs and accompanying evidence, but address the record only to the extent necessary to set forth our analysis and findings and do not repeat or address all of the parties' arguments or evidence. *See Omega SA (Omega AG) (Omega Ltd.) v. Alpha Phi Omega*, 118 USPQ2d 1289, 1292 n.11 (TTAB 2016); *Guess? IP Holder LP v. Knowluxe LLC*, 116 USPQ2d 2018, 2019 (TTAB 2015).

## I.    Background

Applicant JHO Intellectual Property Holdings LLC seeks to register the mark PURPLE RAIN on the Principal Register in standard characters for "Dietary supplement drink mixes; Dietary supplemental drinks; Dietary and nutritional supplements; Liquid nutritional supplement; Nutritional supplement energy bars; Nutritional supplements; Nutritional and dietary supplements formed and packaged as bars; Powdered nutritional supplement drink mix" in International Class 5, and

---

[2] 5 TTABVUE.

[3] The Federal Rules of Civil Procedure are applicable in Board proceedings pursuant to Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a).

"Energy drinks; Isotonic drinks; Non-alcoholic drinks, namely, energy shots; Sports drinks" in International Class 32 (collectively, "Applicant's goods").[4]

Opposers are: (1) Paisley Park, which claims to own rights in the name, image and likeness of Prince Rogers Nelson (the musical artist commonly known, and referred to herein, as "Prince"); and (2) NPG, which claims to own registered and common law rights in the trademark PURPLE RAIN.[5] Opposers assert three grounds for opposition: (1) likelihood of confusion under Trademark Act Section 2(d), 15 U.S.C. § 1052(d); (2) dilution by blurring under Trademark Act Section 43(c), 15 U.S.C. § 1125(c); and (3) false suggestion of a connection with Prince under Trademark Act Section 2(a).[6] Opposers plead NPG's ownership of a registration and five pending applications (three of which have since matured to registration) for the mark PURPLE RAIN, and associated common law rights, for goods and services in International Classes 9, 16, and 41.[7]

---

[4] Application Serial No. 88766841 was filed on January 21, 2020, under Trademark Act Section 1(b), 15 U.S.C. § 1051(b), based on Applicant's assertion of a bona fide intent to use the mark in commerce.

[5] 5 TTABVUE 3 (citing Declaration of Andrea Bruce at ¶¶ 3-4, 32).

[6] 1 TTABVUE 2.

[7] *See id.* at 7-10, ¶¶ 4-6; *see also id.* at 17-21 (TSDR record for, inter alia, Registration No. 5551259 for goods in International Class 9, registered Aug. 28, 2018).

Ms. Bruce's declaration states that Opposer NPG owns Registration Nos. 6615587 (formerly, pleaded Application No. 87479695), and 6615588 (formerly, pleaded Application No. 87479698), *see* 5 TTABVUE 39-42, ¶ 32, but does not attach the corresponding TSDR records for the issued registrations or state that these registrations are valid and subsisting, and that Opposer NPG remains the owner of the registrations and the marks shown therein. Although it is not necessary for Opposers to amend their pleading to assert the subsequently-issued registrations, the registrations must be properly made of record if Opposers intend to rely on them. *See* Trademark Rule 2.122(d)(2), 37 C.F.R. § 2.122(d)(2); *United Glob. Media Grp. v. Tseng*, 112 USPQ2d 1039, 1048 (TTAB 2014); *UMG Recordings Inc. v. O'Rourke*, 92 USPQ2d 1042, 1045 n.12 (TTAB 2009); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF

Applicant, in its Answer, admits that its mark PURPLE RAIN is identical to Opposers' pleaded marks and its use of such mark is without Opposers' consent or permission, denies the remaining salient allegations of the notice of opposition, and asserts eight "affirmative defenses."[8]

## II.   Motion for Summary Judgment

### A. Legal Standards

Entry of summary judgment is appropriate only where there are no genuine disputes as to any material facts, thus allowing the case to be resolved as a matter of law. FED. R. CIV. P. 56(a). A factual dispute is genuine if, on the evidence of record, a reasonable fact finder could resolve the matter in favor of the non-moving party. *See Opryland USA Inc. v. Great Am. Music Show Inc.*, 970 F.2d 847, 23 USPQ2d 1471, 1472 (Fed. Cir. 1992); *Olde Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992); *see* also TBMP § 528.01.

The Board views evidence on summary judgment in the light favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. *Lloyd's Food Prods., Inc. v. Eli's, Inc.*, 987 F.2d 766, 25 USPQ2d 2027, 2029 (Fed. Cir. 1993); *Opryland USA*, 23 USPQ2d at 1472. We may not resolve genuine disputes as to material facts on summary judgment; we only may ascertain whether genuine

---

PROCEDURE (TBMP) § 528.05(d) (June 2022). Ms. Bruce, through her declaration, also submits an unpleaded registration. 5 TTABVUE 40, 213 (Exh. S). The Board's practice, in this regard, is that a party may not obtain summary judgment on an unpleaded issue. *See Omega SA v. Alpha Phi Omega*, 118 USPQ2d 1289, 1291 n.2, 1292 (TTAB 2016) (party may not obtain summary judgment on unpleaded claim or defense); *see also* TBMP § 528.07(a). Thus, in considering Opposers' motion, we have not considered these registrations.

[8] 4 TTABVUE 3-5, ¶¶ 12, 16, 19, 24-27.

disputes as to material facts exist. *See Lloyd's Food Prods.*, 25 USPQ2d at 2029; *Olde Tyme Foods*, 22 USPQ2d at 1542; *Cap. Speakers Inc. v. Cap. Speakers Club of Wash. D.C. Inc.*, 41 USPQ2d 1030, 1034 (TTAB 1996); *see also* TBMP § 528.01 and cases cited in n.11.

As the party moving for summary judgment, Opposers must establish there is no genuine dispute as to their entitlement to a statutory cause of action, their Section 2(a) claim, or the affirmative defenses subject to the motion. Applicant, as the non-moving party, may not rest merely on the allegations of its pleadings and assertions of counsel. Rather, Applicant must designate specific portions of the record or produce additional evidence showing the existence of a genuine issue of material fact for trial. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Relevant Facts and Arguments of the Parties

Opposers, supported by the Declarations of Andrea Bruce (at the time of filing, identified as Vice President and Manager of Comerica's Specialty Asset Management Department, and currently, an officer of Paisley Park),[9] Tracy L. Deutmeyer (counsel for Opposers), Lora M. Friedemann (counsel for Opposers), and the Declaration and Expert Report of Dr. Melissa Pittaoulis, and attached exhibits, argue that Applicant's subject mark PURPLE RAIN creates a false suggestion of a connection with Prince.

Specifically, Opposers' evidence shows that PURPLE RAIN is the title of Prince's "most iconic" album (shown below), which was certified "13x Platinum" by the

---

[9] *Compare* 11 TTABVUE 7 (identifying Ms. Bruce as President of Paisley Park) *with id.* at 11 (identifying Ms. Bruce as Vice President of Paisley Park).

Recording Industry of America, and sold over 15 million copies in the United States and 25 million copies worldwide.[10]



Moreover, Opposers introduced evidence that the PURPLE RAIN album earned numerous awards, was inducted into the Grammy Hall of Fame, and was added to the Library of Congress' National Recording Registry list of sound recordings that are "culturally, historically, or aesthetically important."[11] Opposers' evidence also shows that the title song on the album is ranked number 143 on Rolling Stone magazine's list of the "500 Greatest Songs of All Time."[12]

Further, Opposers rely on evidence that PURPLE RAIN is the title of a motion picture, scored by and starring Prince, which grossed over $68 million in the United States, won an Academy Award for Best Original Song Score, and was added by the Library of Congress for preservation in the National Film Registry for being "culturally, historically, or aesthetically significant."[13] Opposers' merchandising

---

[10] 5 TTABVUE 4, 5 (citing Bruce Decl. ¶¶ 7, 11).

[11] *Id.* at 5 (citing Bruce Decl. ¶ 12).

[12] *Id.* at 6 (citing Bruce Decl. ¶ 16).

[13] *Id.* at 7 (citing Bruce Decl. ¶ 19).

efforts have included licensing PURPLE RAIN for use on costumes, collectible figurines, t-shirts, and tote bags.[14] In addition, Opposers' evidence shows use of PURPLE RAIN for Prince's concert tour promoting the album by the same name, and a PURPLE RAIN room at the Paisley Park Museum in Prince's former home.[15] Ms. Deutmeyer testifies about online infringers of the PURPLE RAIN persona, including seventeen unauthorized uses she located in December 2021.[16]

Opposers commissioned Dr. Pittaoulis to conduct a consumer survey measuring recognition of the term PURPLE RAIN, which Opposers argue is evidence of consumer association of PURPLE RAIN with Prince. Dr. Pittaoulis earned her Ph.D. in sociology with a focus on quantitative analysis from Temple University, and currently is an Associate Director at NERA Economic Consulting ("NERA"). Dr. Pittaoulis has "extensive experience working on surveys in intellectual property disputes" including "designing surveys used to establish likelihood of confusion, secondary meaning, and genericness." Since 2016, she has testified as an expert in nineteen depositions and four trials or hearings in federal district court and in Board proceedings. Dr. Pittaoulis also has authored papers and given presentations on advertising and surveys.[17]

---

[14] *Id.* at 10-13 (citing Bruce Decl. ¶¶ 29, 31).

[15] *Id.* at 11 (citing Bruce Decl. ¶¶ 20-22).

[16] *Id.* at 380-81 (Deutmeyer Decl. ¶¶ 4-6).

[17] *Id.* at 221-22 (Pittaoulis Expert Report and Decl. ¶¶ 1-2, 5-6), 233-36 (Pittaoulis Curriculum Vitae).

Dr. Pittaoulis designed a double-blind online survey in which 1,200 individuals in the United States over the age of 18, who are representative of the gender and age of the U.S. adult population, were divided randomly into three groups of 400 individuals. Each group was questioned about one of three phrases: PURPLE RAIN, MARGARITAVILLE, and PINK RAIN.[18] First, the survey tested recognition of each phrase. Dr. Pittaoulis reports that 82% of the 400 assigned respondents reported that they were familiar with the phrase PURPLE RAIN.[19] Next, the survey tested association of the phrase PURPLE RAIN with Prince: 66.3% of the 400 respondents replied in response to open-ended questions (such as: "What, if anything, comes to mind when you hear or see the phrase PURPLE RAIN?)[20] that they associate the phrase with Prince (by any of his monikers), or a song, movie, or album by Prince.[21] Accordingly, Dr. Pittaoulis concludes, "the phrase PURPLE RAIN has high recognition among the general consuming public," and "a substantial majority of respondents expressly associate the phrase with the artist Prince and/or his song or movie by the same name."[22]

---

[18] *Id.* at 223, 227-28 (Pittaoulis Decl. ¶¶ 12, 32). Dr. Pittaoulis states that the survey was executed by Dynata, "a leading market research firm that specializes in sampling and survey data collection. Dynata maintains a panel of individuals who have agreed to take online surveys in exchange for nominal incentives." *Id.* at 223 (Pittaoulis Decl. ¶ 11).

[19] *Id.* at 228 (Pittaoulis Decl. ¶ 34).

[20] *Id.* at 242.

[21] *Id.* at 228-29 (Pittaoulis Decl. ¶ 36).

[22] *Id.* at 230 (Pittaoulis Decl. ¶ 43).

Opposers additionally assert that quotes and headlines from news publications and internet sites show association of the phrase PURPLE RAIN with Prince, including:

- Rob Perez, *Purple Rain, 35 Years Later*, Minneapolis St. Paul Magazine (Oct. 24, 2019) ("It might be impossible and unnecessary to separate the man from the music [Purple Rain] and the movie [Purple Rain].");

- Jon Schuppe & Jacquellena Carrero, *Prince, Iconic 'Purple Rain' Legend, Dead at 57*, NBC News (Apr. 21, 2016);

- Alan Light, *500 Greatest Albums: Prince Achieves Global Takeover With 'Purple Rain,'* Rolling Stone Magazine (Sept. 2020) ("For countless listeners, Prince was Purple Rain.");

- Andy Healy, *Prince and The Revolution's 'Purple Rain' Turns 35|Anniversary Retrospective*, Albumism (June 23, 2019) ("Prince takes the phrase [Purple Rain] and wraps it up in his own persona.");

- Andy Price, *The Genius of . . . Purple Rain by Prince and the Revolution*, GUITAR.COM (Oct. 6, 2021) ("Becoming an instant classic almost from its first performance, Purple Rain would become Prince's signature, and most beloved, song.");

- *What is the Meaning Behind the Song Purple Rain by Prince?*, LYREKA.COM (Oct. 15, 2020) ("More than perhaps any of the many songs by Prince, 'Purple Rain' has gone on to become the symbol for the veritable symbol which created it.");

- *What Exactly Is "Purple Rain?*, GEEKSIDED.COM (Apr. 26, 2016) ("[Purple Rain] defined Prince's career and is one of the most recognizable phrases from any song ever recorded.");

- *Revisiting Classic Albums: Why Prince's Purple Rain Was an Instant Classic*, THEMANUAL.COM (Jan. 2, 2020) ("Purple Rain made Prince a figure so large you could practically see him from space, and an immortal one at that."); and

- Two tributes to Prince after his death evoking PURPLE RAIN: The May 2, 2016 cover of the *New Yorker* magazine featuring an illustration of purple

rain; and the April 21, 2016 "home page" of the Google search engine showing the Google logo splashed by purple rain.[23]

Opposers also provide evidence that they are not affiliated with Applicant and have not consented to Applicant's use of PURPLE RAIN.[24] Finally, Opposers offer dictionary definitions to show that "purple rain" is not a term defined in English dictionaries.[25]

In opposition to the motion, Applicant merely argues, without testimonial or any other evidentiary support, that Dr. Pittaoulis' survey does not show a high degree of association by the relevant consuming population of PURPLE RAIN with Prince. In particular, Applicant criticizes the survey for not asking respondents about association of PURPLE RAIN with supplements or energy drinks.[26] To show its mark is not associated exclusively with Prince, Applicant submits records from the USPTO's databases of third-party applications and registrations that include the formative terms PURPLE RAIN or its homophone PURPLE REIGN, including the following registrations:

- Registration No. 5949739 for **PURPLE RAIN** in standard characters in connection with "Coffee; coffee and coffee substitutes; Coffee-based iced beverages; Iced coffee; Cold brew coffee," in International Class 30, registered December 31, 2019;

- Registration No. 5854845 for **PP PLUIE POURPRE and design** (English translation: "Purple Rain") for "Bottoms as clothing; Camisoles; Coats; Jerseys; Leggings; Outer jackets; Panties; Pants; Shirts; Short-sleeve shirts; Singlets; Skirts; Tee-shirts; Tops as clothing; Trousers; Underpants;

---

[23] *Id.* at 17-20, 42-44, 114-211 (Bruce Decl. ¶ 33, and Exhs. J-R).

[24] *Id.* at 21 (citing Bruce Decl. ¶ 34, and Applicant's Answer at ¶ 19 (4 TTABVUE)).

[25] *Id.* at 17 (citing Friedemann Decl. ¶¶ 2-3, and Exhs. A, B).

[26] 7 TTABVUE 10, 12 n.3.

Underwear; Vests; Waterproof jackets and pants; Slips being underclothing" in International Class 25, registered September 10, 2019;

- Registration No. 5792111 for **PURPLE RAIN** in standard characters for "Feed supplements for Livestock" in International Class 5, registered July 2, 2019;

- Registration No. 5501129 for **DR. PURPLE RAIN** in standard characters for "Non-medicated mouth wash and rinse; Tooth paste; Tooth powder" in International Class 3, " Tongue scrapers" in International Class 10, and "Dental floss; Tooth brushes" in International Class 21, registered June 26, 2018;

- Registration No. 5499609 for **PURPLE RAIN** in standard characters for "candy" in International Class 30, registered June 19, 2018;

- Registration No. 5364286 for **PURPLE RAIN GARLIC** ("garlic" disclaimed) in standard characters for "garlic, fresh" in International Class 31, registered December 26, 2017.

- Registration No. 4955973 for **SUPER PURPLE RAIN** in standard characters ("super" disclaimed) for "fireworks" in International Class 13, registered May 10, 2016 (cancellation proceeding pending);

- Registration No. 4158267 for **PURPLE RAIN** in standard characters for "Cleaning preparations for automotive use, household use, and eyeglass lenses" in International Class 3, registered June 12, 2012 and renewed March 16, 2022;

- Registration No. 4234357 for **PURPLE RAIN** in standard characters for "Coatings in the nature of protectants for automobile surfaces, vinyl, leather, plastic, rubber, glass, and painted surfaces" in International Class 2, and "Polymer sealant for cleaning, shining and protecting automobile exterior surfaces" in International Class 3, registered October 30, 2012 and renewed March 16, 2022;

- Registration No. 3304646 for **PURPLE – REIGN** in standard characters for "Clothing, namely, jeans, pants, shirts, t-shirts, tank-tops, tops, shorts, skirts" in International Class 25, registered October 2, 2007 and renewed September 26, 2017; and

- Registration No. 2943641 for **PURPLE RAIN** in standard characters for "hair gel" in International Class 3, registered April 26, 2005 and renewed June 19, 2014.[27]

## C. Analysis

### 1. Entitlement to a Statutory Cause of Action

A party in the position of plaintiff may oppose registration of a mark where such opposition is within the zone of interests protected by the statute and the party has a reasonable belief in damage proximately caused by registration of the mark. *See Peterson v. Awshucks SC, LLC*, 2020 USPQ2d 11526, at *5 (TTAB 2020) (citing *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *6-7 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021)); *see also* Trademark Section 13.

Here, Opposers' motion for partial summary judgment does not address their entitlement to a statutory cause of action, nor does Applicant contest it. But it is a necessary element in this, and every, cause of action before the Board, and we cannot determine whether Opposers prevail as a matter of law without addressing it. Based on the evidence of record, including evidence of NPG's Registration No. 5551259 for PURPLE RAIN, Opposer Paisley Park's ownership of Prince's name and image

---

[27] 7 TTABVUE 8-9 (Exh. A). We do not consider the internet hyperlinks offered by Applicant, *see* 7 TTABVUE 4-8, as they are not sufficient evidence of record. Trademark Rule 2.122(e)(2), 37 C.F.R. § 2.122(e)(2); *TV Azteca, S.A.B. de C.V. v. Martin*, 128 USPQ2d 1786, 1790 n.14 (TTAB 2018) ("The Board does not accept Internet links as a substitute for submission of a copy of the resulting page."). Nor do we consider the pictures of products offered by Applicant in its brief without a declaration authenticating such evidence. FED. R. EVID. 901; *see also* TBMP § 528.05(e) (materials which are not self-authenticating under the Trademark Rules may be admissible on summary judgment if properly authenticated by an affidavit or declaration pursuant to FED. R. CIV. P. 56(e)). In any event, the identity at issue here is PURPLE RAIN, rather than the uses of PURPLE KIDDLES, PURPLE GUAVA PEAR or PURPLE HAZE, ELEMENTS RAIN, FREE RAIN, RAINWATER, or RAIN offered by Applicant.

rights, and the joint Opposers' use of PURPLE RAIN in licensing and merchandising, we find there is no genuine dispute that the opposition is within each of the Opposers' zone of interests and each of the Opposers have a reasonable belief in damage by the registration of Applicant's mark. Therefore, there is no genuine dispute of material fact and Opposers are entitled to oppose registration of the mark. *See U.S. Olympic Comm. v. Tempting Brands Netherlands B.V.*, 2021 USPQ2d 164, at \*16-17 (TTAB 2021) (finding entitlement to bring a Section 2(a) claim by virtue of, inter alia, sales of goods and other uses under the mark) (citing *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at \*4 (Fed. Cir.), *cert. denied*, 142 S. Ct. 82 (2021)).

## 2. Section 2(a): False Suggestion of a Connection

Section 2(a), in relevant part, prohibits registration of "matter which may . . . falsely suggest a connection with persons, living or dead, institutions, beliefs or national symbols . . . ."

As applied to this case, Opposers must establish there is no genuine dispute that:

(1) Applicant's mark PURPLE RAIN is the same or a close approximation of Prince's name or identity;[28]

---

[28] Opposers did not expressly plead the first element of the false suggestion claim in the Notice of Opposition. As we have explained, a party generally may not obtain summary judgment on an issue that has not been properly pleaded. *See* note 7, *supra.* However, if the parties, in briefing a summary judgment motion, have treated an insufficiently-pleaded claim on its merits, and the nonmoving party has not objected to the motion on the ground that it is based on an improperly pleaded issue, the Board may deem the pleadings to have been amended, by agreement of the parties, to properly allege the claim. *Cf. Paramount Pictures Corp. v. White*, 31 USPQ2d 1768, 1772 (TTAB 1994) (pleading deemed amended where nonmoving party did not object to motion as seeking judgment on unpleaded claim), *aff'd mem.*, 108 F.3d 1392 (Fed. Cir. 1997). For purposes of determining the summary judgment

(2) The mark would be recognized as such, in that it points uniquely and unmistakably to Prince;

(3) Opposers are not connected with the goods sold by Applicant or Applicant's other activities under the PURPLE RAIN mark; and

(4) PURPLE RAIN is of sufficient fame or reputation that, when Applicant's mark is used in connection with its goods, a connection with Prince would be presumed.

*See Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363, 2021 USPQ2d 913, at \*11 (Fed. Cir. 2021) (citing cases); *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co. Inc.*, 703 F.2d 1372, 217 USPQ 505, 509 (Fed. Cir. 1983); *Pierce-Arrow Soc'y v. Spintek Filtration, Inc.*, 2019 USPQ2d 471774, at \*4 (TTAB) (citing cases), *appeal dismissed*, No. 20-1068 (Fed. Cir. Nov. 13, 2019).

### a. Close Approximation of Name or Identity

First, "Opposer[s'] Section 2(a) claim requires proof . . . that consumers view [PURPLE RAIN] so closely with [Prince] that they recognize it as [Prince's] name (or nickname), identity or persona." *U.S. Olympic Comm.*, 2021 USPQ2d 164, at \*19 (citing *Bos. Athletic Ass'n v. Velocity, LLC*, 117 USPQ2d 1492, 1497 (TTAB 2015)). "Applicant's mark must do more than simply bring [Prince's] name to mind." *Id.* (citing *Pierce-Arrow Soc'y*, 2019 USPQ2d 471774, at \*15). "[T]he similarity required

---

motion, the Board will deem such new allegations to be denied if no amended answer is accepted and of record at the time; *see also* TBMP § 528.07(a).

Here, the parties, in their summary judgment briefs, treated Opposers' insufficiently pleaded claim on its merits and Applicant never objected to Opposers' motion on the ground that it is based on an improperly pleaded issue. *See* 1 TTABVUE 17-20, 7 TTABVUE. Therefore, we deem that the pleadings have been amended, by agreement of the parties, to sufficiently allege Opposers' Section 2(a) claim, and that Applicant has asserted a general denial of such claim.

for a 'close approximation' . . . is more than merely 'intended to refer' or 'intended to evoke.'" *Id.* (citing *Bos. Athletic Ass'n*, 117 USPQ2d at 1497).

A term may be considered the identity of a person even if his or her name or likeness is not used. All that is required is that the mark sought to be registered would be recognized by consumers as a reference to a specific person or individual (in this case, Prince). *In re Sauer*, 27 USPQ2d 1073, 1074 (TTAB 1993) (finding BO BALL for oblong shaped leather ball properly refused under Section 2(a) as a reference to athlete Bo Jackson), *aff'd mem.*, 26 F.3d 140 (Fed. Cir. 1994); *In re Nieves & Nieves LLC*, 113 USPQ2d 1639, 1644 (TTAB 2015) (holding ROYAL KATE used with consumer products, including fashion products, suggested a connection with Kate Middleton). *Cf. Buffett v. Chi Chi's, Inc.*, 226 USPQ 428, 430 (TTAB 1985) (finding evidence presented a genuine dispute of material fact as to whether MARGARITAVILLE is associated with entertainer Jimmy Buffett).

Opposers have submitted, inter alia, a declaration of a knowledgeable witness (Ms. Bruce) regarding uses of the term PURPLE RAIN by Prince (including uses in connection with his musical career, an album, a movie, and sales of associated merchandise using the term), and (as discussed further herein) a survey showing that the public commonly associates the term PURPLE RAIN with Prince. The aforementioned evidence establishes that PURPLE RAIN is widely recognized as synonymous with Prince. The unsolicited media coverage closely associating Prince and PURPLE RAIN has less probative value because Opposers have not provided the circulation of these articles and media (though we recognize, generally, that at least

the *New York Times*, *Rolling Stone*, *NBC News*, the *New Yorker*, and *Google* are widely-known publications, media, and search engines with nationwide use and distribution). Nonetheless, Applicant does not challenge any of this evidence, or Opposers' assertion that PURPLE RAIN is a close approximation of Prince's identity.

In sum, there is no genuine dispute of material fact regarding the first factor under Trademark Act Section 2(a).

### b. Points Uniquely and Unmistakably to Prince

As to the second factor, "to show an invasion of one's 'persona,' it is not sufficient to show merely prior identification with the name adopted by another . . . . The mark . . . as used by [Applicant], must point uniquely to [Prince]." *Univ. of Notre Dame du Lac*, 217 USPQ at 509; *see also Bos. Athletic*, 117 USPQ2d at 1497 ("Under concepts of the protection of one's 'identity,' . . . the initial and critical requirement is that the name (or an equivalent thereof) claimed to be appropriated by another must be unmistakably associated with a particular personality or 'persona.'") (quoting *Notre Dame*, 217 USPQ at 509).

We find on this record that PURPLE RAIN points uniquely and unmistakably to Prince. There is plentiful evidence of the notoriety of Prince's PURPLE RAIN song and PURPLE RAIN movie. There is also evidence of Opposers' substantial merchandising efforts dovetailing the song and movie and the connection to Prince. Opposers also emphasize their survey. The survey evidence shows that a significant percentage of the general public (66.3%) recognizes PURPLE RAIN as a reference to Prince.

As discussed in more detail below, we find no flaw in Opposers' survey and the methodology to calculate the association of PURPLE RAIN with Prince.

We have considered Applicant's arguments that, by surveying the general adult population, Dr. Pittaoulis did not survey the relevant universe because "[t]he target market for Applicant's goods are younger people, e.g., college students and those below age 30" and therefore "less than the 29.5% of respondents are in the relevant consumer group."[29]

Applicant's arguments are insufficient to raise a genuine dispute of material fact. Where, as here, there are no limitations as to classes of purchasers in the respective identifications, we must presume that the identified goods and services will be purchased by the usual classes of purchasers which, in this case, include ordinary consumers. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011); *Morton-Norwich Prods., Inc. v. N. Siperstein, Inc.*, 222 USPQ 735, 736 (TTAB 1984); *see also Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 107 USPQ2d 1167, 1173 (Fed. Cir. 2013) ("PTO proceedings are 'based on the content of the registration application' and not upon any specific use of the challenged mark in commerce.") (quoting *Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d 1229, 76 USPQ2d 1310, 1313 (Fed. Cir. 2005) ("an opposition to registration is based on the content of the registration application.")). Further, there is no factual evidence in the record as to the demographics of purchasers of Applicant's goods or that such individuals would have

---

[29] 7 TTABVUE 10.

any different understanding of PURPLE RAIN than the general universe measured by Opposers' survey. *Cf. U.S. Navy v. U.S. Mfg. Co.*, 2 USPQ2d 1254, 1258 (TTAB 1987) (finding survey of general public not persuasive to show consumers associate term "USMC" with the U.S. Government where the record was "replete with testimony that applicant's goods are sold only to trained, certified professionals in the field . . . ."). Thus, on the record in this case, the general consuming public is the relevant group.

Applicant also does not explain why it chose the mark or offer another meaning in light of its products or target consumers. Thus, "[a]lthough it is not [Applicant's] burden to explain why it adopted its mark, [its] choice not to do so means we do not have any explanation which might show that the term has another significance when used for [Applicant's goods]." *Hornby*, 87 USPQ2d at 1426.

We find that there is no genuine dispute of material fact as to the expert opinion of Dr. Pittaoulis who designed the survey and studied its results: namely, that the general consuming public—which, as discussed above, is the relevant universe—recognizes PURPLE RAIN as referring to Prince.

The only evidence furnished by Applicant that the public does not uniquely associate PURPLE RAIN with Prince are the third-party applications and registrations described above. Applicant argues this case is akin to *In re Horwitt,* 125 USPQ 145 (TTAB 1960), in which the Board found that evidence of ninety third-party registrations for marks consisting of or comprising the letters "U.S." for a large

variety of products supported the assumption that registration of marks including "U.S." is not, per se, precluded by Section 2(a).[30]

To the extent that *Horwitt* is instructive here, we find only three of the supplied live applications and registrations potentially are relevant to our analysis inasmuch as they identify food or drink items arguably related to the goods identified in Applicant's involved application: Registration No. 5949739, for PURPLE RAIN in connection with coffee products; Registration No. 5499609, for PURPLE RAIN in connection with candy; and Registration No. 5364286, for PURPLE RAIN GARLIC in connection with garlic. *See Hornby*, 87 USPQ2d at 1427 (finding evidence of third-party registrations of the term "TWIGGY" for goods unrelated to Applicant's goods to have "no probative value" in showing that the name does not point uniquely to the petitioner); *In re Pederson,* 109 USPQ2d 1185, 1196 (TTAB 2013) (registrations for unrelated goods and services not probative). Even if this evidence was not so scant, third party registrations and applications are not evidence that the marks depicted therein are in use or that the public is aware of them. *Pederson*, 109 USPQ2d at 1196 (third party registrations not probative where there is no evidence that the public is aware of the marks); *White*, 73 USPQ2d at 1719-20 (contention regarding third party registrations and applications where there is no evidence of use is unsupported argument).

---

[30] 7 TTABVUE 3. In *Horwitt*, the applicant appealed a refusal of registration of the mark U.S. HEALTH CLUB under the portion of Section 2(a) that prevents registration of a mark that falsely suggests a connection with "national symbols" (i.e. the United States Government).

As the Board stated in *In re Jackson Int'l Trading Co. Kurt D. Bruhl GmbH & Co. KG*, 103 USPQ2d 1417, 1420 (TTAB 2012) ("*Jackson*"), though in the ex parte context, "[i]f applicant wished to show that there are numerous individuals known as Benny Goodman, or that the renown of Benny Goodman, the bandleader, composer and clarinetist, has faded to the point that the applied for mark does not point uniquely and unmistakably to him, then applicant was obligated to introduce such evidence to rebut the evidence submitted by the examining attorney." Applicant has not introduced sufficiently probative rebuttal evidence here. Accordingly, there is no genuine dispute of material fact regarding the second factor under Trademark Act Section 2(a).

### c. Opposers' Connection with Applicant's Goods

Opposers rely on uncontroverted evidence that Prince is not connected with Applicant's activities or the goods provided, or intended to be provided, under PURPLE RAIN.[31] There is no genuine dispute of material fact as to the third factor under Trademark Act Section 2(a).

### d. Presumption of a Connection Due to Sufficient Fame and Reputation

Under the fourth factor of the Section 2(a) test, the person or identity to whom the subject mark refers must be sufficiently famous, or of such reputation, that relevant consumers of the applicant's goods would presume that the applicant has a connection with that person. *See In re Int'l Watchman, Inc.*, 2021 USPQ2d 1171, at *25

---

[31] *See supra* notes 8 and 24 and accompanying text.

(TTAB 2021). Moreover, although it "can be highly relevant" that an applicant's goods are similar to goods or services associated with the person or institution offered by the party challenging the registration, *Piano Factory Grp.*, 2021 USPQ2d 913, at \*14, "[t]here is no prerequisite that the institution or person actually provide the goods in order to find that an applicant's mark creates a false suggestion of a connection. Nor does it 'require proof that a prior user's reputation 'is closely related to an applicant's goods.'" *Int'l Watchman, Inc.*, 2021 USPQ2d 1171, at \*25 (citing *Piano Factory Grp.*, 2021 USPQ2d 913, at \*14 (internal citation omitted)). If the applicant's goods are of a type that consumers would associate them in some fashion with a sufficiently famous person or institution, then we may infer that purchasers of the goods or services would be misled into making a false connection with the named party. *Int'l Watchman, Inc.*, 2021 USPQ2d 1171, at \*25 (citing cases). "Unlike in the case of trademark or trade name infringement, it is enough that the defendant-applicant uses the plaintiff's name to cause a false connection between the plaintiff and the defendant's goods." *Piano Factory Grp.*, 2021 USPQ2d 913, at \*14.

Here, the record contains copious, unrebutted evidence of Prince's fame among the general consuming public and his unique association with the words PURPLE RAIN, confirmed by the Pittaoulis survey. As we discussed above, Opposers also have shown that they use and license PURPLE RAIN for a variety of consumer products. In this regard, Opposers argue that "[b]ecause purchasers are accustomed to celebrity licensing, they may presume a connection with a celebrity even though the goods have

no relation to the reason for the celebrity's fame."[32] We agree. In other cases we have recognized it is commonplace for performers and owners of well-known marks to expand their product lines, in order to incorporate a diverse set of goods to capitalize on the renown of their names and brands. For example, in a case involving the mark MARC CHAGALL for use in connection with vodka, the Board opined "[t]he names and likenesses of well known persons frequently are licensed for use on various goods and services . . . . Thus, the name and/or likeness of a well known writer may well be 'extended' for use on goods and services unrelated to writing." *Ass'n pour la Defense et la Promotion de L'oeuvre de Marc Chagall dite Comite Marc Chagall v. Bondarchuk*, 82 USPQ2d 1838, 1844 (TTAB 2007) (quoting *In re Sloppy Joe's Int'l Inc.,* 43 USPQ2d 1350, 1354 (TTAB 1997) (affirming refusal of mark containing the portrait of Ernest Hemingway for restaurant and bar services under Section 2(a)); *see also Jackson*, 103 USPQ2d at 1420 (regarding the mark BENNY GOODMAN for cosmetics, "[I]t is commonplace for performers and owners of well-known marks to expand their product lines to incorporate a diverse set of goods to capitalize on the renown of their names and brands.").

Applicant has not provided evidence identifying the relevant consumers of its identified goods and how they may differ from the general consumers of Opposers' products. Nor has Applicant offered any evidence to counter Opposers' evidence as to the significant fame of Prince and PURPLE RAIN. And Applicant has not pointed us to a factual basis supportive of the notion that, as to the goods here, consumers would

---

[32] 5 TTABVUE 21.

not make the connection with Prince. Accordingly, on this record, we find that there is no genuine dispute of material fact that consumers encountering Applicant's mark, when used in connection with Applicant's goods, will presume a connection between PURPLE RAIN and Prince under the fourth factor of Trademark Act Section 2(a).

In sum, we find there is no genuine dispute of material fact as to the false suggestion of a connection claim under Trademark Act Section 2(a).

### 3. Affirmative Defenses

Finally, we turn to the portion of Opposers' motion regarding the affirmative defenses in Applicant's Answer. Opposers, in the alternative, move to strike or for summary judgment on the defenses. Applicant's brief opposition to Opposers' motion fails to address Opposers' arguments.[33]

The motion to strike, having been filed more than 21 days after Applicant's Answer, is untimely and therefore given no consideration. FED. R. CIV. P. 12(f)(2); *Order of Sons of Italy in Am. v. Profumi Fratelli Nostra AG*, 36 USPQ2d 1221, 1222 (TTAB 1995); *W. Worldwide Enters. Grp. v. Qinqdao Brewery*, 17 USPQ2d 1137, 1139 (TTAB 1990); *see also* TBMP § 506.02. Nonetheless, in our discretion, we review the affirmative defenses.

Applicant's first three defenses merely are amplifications of Applicant's denials of Opposers' claims.[34] Although it is permissible to amplify a denial of an allegation in a pleading, *see Morgan Creek Prods., Inc. v. Foria Int'l, Inc.*, 91 USPQ2d 1134, 1135-

---

[33] *See* 7 TTABVUE.

[34] 4 TTABVUE 4-5, ¶¶ 24-26,

36 (TTAB 2009), such amplifications are not (and should not be pled as) separate "defenses," and we do not treat these defenses as such here. *Illyrian Import, Inc. v. ADOL Sh.p.k.*, 2022 USPQ2d 292, at \*5 (TTAB 2022) (citing *Sabhnani v. Mirage Brands, LLC*, 2021 USPQ2d 1241, at \*4 n. 5 (TTAB 2021).

Paragraph 27 of Applicant's Answer states, in its entirety, "Applicant claims the equitable defenses of unclean hands, laches, estoppel, acquiescence, and fraud, each of which are sufficient to overcome the instant opposition."[35] A legally sufficient pleading of each defense must include enough factual detail to provide Petitioner fair notice of the basis for the defense. FED. R. CIV. P. 8(b)(1) and 12(f); *see, e.g.*, *IdeasOne Inc. v. Nationwide Better Health Inc.*, 89 USPQ2d 1952, 1953 (TTAB 2009); *Fair Indigo LLC v. Style Conscience*, 85 USPQ2d 1536, 1538 (TTAB 2007); *Midwest Plastic Fabricators, Inc. v. Underwriters Labs. Inc.*, 5 USPQ2d 1067, 1069 (TTAB 1980); *see also* TBMP § 311.02(b). Applicant has done no more than list these defenses by name, and has provided no further facts upon which they might plausibly be based.

Further, in general, the affirmative defenses of laches and acquiescence are inapplicable in opposition proceedings because they do not begin to run until publication of the application for opposition. *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Eds., Inc.*, 937 F.2d 1572, 19 USPQ2d 1424, 1427 (Fed. Cir. 1991); *Land O' Lakes Inc. v. Hugunin*, 88 USPQ2d 1957, 1959 (TTAB 2008). To the extent the allegation of "fraud" is a collateral attack on the validity of Opposer NPG's pleaded registrations, the Board may not entertain such defense in the absence of a timely

---

[35] *Id.* at 5, ¶ 27.

counterclaim to cancel those registrations. *See* Trademark Rule 2.106(b)(3)(ii), 37 C.F.R. 2.106(b)(3)(ii); *Skincode AG v. Skin Concept AG*, 109 USPQ2d 1325, 1329 n.5 (TTAB 2013); *see also* TBMP § 313.01.

In view thereof, the affirmative defenses in paragraph 27 of Applicant's Answer are **stricken** and Opposers' motion for summary judgment as to such defenses is **denied as moot**.

## III. Conclusion

In view of the foregoing, Opposers' motion for partial summary judgment as to their claim of false suggestion of a connection under Section 2(a) of the Trademark Act and motion to strike Applicant's affirmative defenses are **granted**.

Because our decision on Opposers' claim of false suggestion of a connection is dispositive of this proceeding, we need not reset a discovery and trial schedule as to the remaining claims. *Cf. Yazhong Inv. Ltd. v. Multi-Media Tech. Ventures, Ltd.*, 126 USPQ2d 1526, 1540 n.52 (TTAB 2018) (Board has the "discretion to decide only those claims necessary to enter judgment and dispose of the case"); *Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d 1477, 1478 (TTAB 2017) (Board has "discretion to decide only those claims necessary to enter judgment and dispose of the case" as its "determination of registrability does not require, in every instance, decision on every pleaded claim.") (quoting *Multisorb Tech., Inc. v. Pactive Corp.*, 109 USPQ2d 1170, 1171-72 (TTAB 2013)).

**Decision:** Judgment is entered against Applicant on the asserted ground of false suggestion of a connection under Trademark Act Section 2(a), the opposition is sustained as to that claim, and registration to Applicant is refused.